**Hugh LYONS, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

**No. 49A02–9112–PC–553.[1]**

Court of Appeals of Indiana, First District.

Oct. 6, 1992.

Rehearing Denied Dec. 7, 1992.

---

**1.** This case was transferred to this office by order of the Chief Judge on September 1, 1992.

Richard Kammen, McClure, McClure & Kammen, Indianapolis, for appellant-petitioner.

Linley E. Pearson, Atty. Gen. of Indiana and Arthur Thaddeius Perry, Deputy Atty. Gen., Indianapolis, for appellee-respondent.

## STATEMENT OF THE CASE

RATLIFF, Judge.

Hugh Lyons appeals from the denial of his petition for post-conviction relief following his conviction for Robbery,[2] a Class C felony and the finding that he is an habitual offender.[3] We affirm.

## ISSUES

We restate the issues as follows:

1. Was there a *Brady*[4] violation when the State failed to provide Lyons with a photograph taken at the time of Lyons' arrest?

2. Was there a violation of *Batson*[5] when the trial court removed the only black juror from the jury panel?

---

2. IND.CODE. § 35–43–2–1.

3. IND.CODE § 35–50–2–8.

4. *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215.

5. *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69.

3. Did the trial court err in failing to give defendant's tendered instructions numbers 1 and 2 regarding identification evidence?

4. Did fundamental error occur during the habitual offender stage of trial when trial counsel failed to tender and the trial court failed to give an instruction defining "prior unrelated felony"?

5. Was Lyons denied his right to effective assistance of appellate counsel?

## FACTS

On February 10, 1984, Lyons attacked William Knelanger, the victim, in downtown Indianapolis. Lyons hit the victim in the side, threw him to the ground, took his wallet, and left. The victim walked to the Greyhound bus station where he saw Lyons enter a taxi cab. He reported the robbery to the bus station security officer and told the officer that Lyons left in the taxi cab. The officer notified the police. The taxi driver took Lyons to a restaurant at 16th and Illinois streets. The police arrived shortly thereafter. The taxi driver told the police that Lyons was walking toward Meridian Street. The police stopped Lyons one block away. The victim arrived in a police car and identified Lyons. A police officer then placed Lyons under arrest and read him his rights. Lyons stated that this time he was really in trouble. Trial Record at 368.[6]

The State filed a two count information against Lyons. Lyons was tried by a jury and found guilty of robbery and was also found to be an habitual offender. Lyons was sentenced to thirty-five years' imprisonment. Our supreme court affirmed Lyons' conviction on direct appeal. *Lyons v. State* (1987), Ind., 506 N.E.2d 813, 817.

On February 27, 1990, Lyons filed a petition for post-conviction relief which was amended on February 1, 1991. A hearing was held on the petition. After taking matters under advisement, the court denied Lyons' petition. Lyons now appeals.

6. Because the record of proceedings was filed in separate sections for the trial court's proceedings and the post-conviction court's proceedings,

## DISCUSSION AND DECISION

Under the rules of post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1, § 5; *St. John v. State* (1988), Ind.App., 529 N.E.2d 371, 374, *trans. denied.* Thus, to succeed on appeal from the denial of his petition, Lyons must show that the evidence is without conflict and leads only to a conclusion opposite that of the trial court. *See id.* The post-conviction court is the sole judge of the weight of the evidence and the witnesses' credibility. *Silvers v. State* (1986), Ind., 499 N.E.2d 249, 251. We find that Lyons has not sustained his burden.

*Issue One*

Lyons asserts that at trial there was a deliberate obstruction of exculpatory evidence. More specifically, he contends the State failed to produce a photograph taken at the time of his arrest, which did not match the description of Lyons as given by the victim and police investigator Don Wright ("Detective Wright").

Suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either as to guilt or punishment irrespective of the good or bad faith of the prosecution. *House v. State* (1989), Ind., 535 N.E.2d 103, 106 (citing *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215). Impeachment evidence, as well as, exculpatory evidence falls within the *Brady* rule. *Id.* at 107. As we have previously noted, there are three types of cases in which the State's duty to disclose evidence to a defendant comes into question:

"(1) cases in which undisclosed evidence demonstrates that the State's case included perjury; (2) cases in which the defendant has made a pre-trial request for specific evidence; and, (3) cases in which the defendant made only a general

we designate the former as "Trial Record" and the latter as "Record."

request for discovery, or no request at all."

*Battle v. State* (1986), Ind.App., 498 N.E.2d 57, 61 (citing *United States v. Agurs* (1976), 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342). A conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is "any reasonable likelihood that the false testimony reasonably affected the judgment of the jury." *Agurs*, 427 U.S. at 103, 96 S.Ct. at 2397, 49 L.Ed.2d at 349–50.

In the case at bar, Detective Wright interviewed Lyons on the morning after his arrest. Initially when asked if Lyons had a beard at the time of his arrest, Detective Wright stated on cross-examination, "No, I don't believe he had a beard." Trial Record at 392. Detective Wright was later called as a defense witness. Once again he was asked if Lyons had any facial hair other than a mustache and the following exchange took place between Detective Wright and defendant's counsel:

"A. Yes, sir, I do believe he had some facial hair on his chin.

Q. Would you describe it as a gootee [sic]?

A. Yes, probably a small gootee [sic].

. . . .

Q. How did he appear on the day you interviewed him, the day just after he was arrested?

A. If I remember right, he had a mustache and he had hair on his chin and some on the side here, I don't remember it going all the way up to his hair, on the side like it is now."

Trial Record at 415 and 428. At the post-conviction hearing, Detective Wright testified that he had seen the photograph taken at the time of Lyons' arrest sometime prior to trial. Record at 163 and 166. On cross-examination, Detective Wright stated that the photograph showed Lyons had a "light beard." Record at 167. Lyons asserts that Detective Wright's failure to describe Lyons' facial hair as a "full beard" at trial is important because the victim had described his attacker as having a mustache and no beard. Trial Record at 337. Hence, Detective Wright's testimony worked to

corroborate the victim's identification testimony. We do not agree with Lyons' characterization of Detective Wright's testimony as perjury.

Detective Wright did not deny that Lyons had some facial hair, not only a mustache but also some hair on his chin. Lyons is merely quibbling over a definition of terms. In his Appellant's brief, Lyons refers to the photograph as depicting him with a "full beard"; whereas, at the post-conviction hearing Detective Wright, looking at the same photograph, stated that he would describe it as a "light beard." Appellant's Brief at 23–24; Record at 167. In any event, as the State points out, Lyons' beard was clearly not a long beard. *See* Record 120. At trial Detective Wright was testifying from his memory. The fact that he did not label what he remembered a "beard" does not show that Detective Wright committed perjury. His testimony at trial does not raise any inferences from which it could be inferred that he testified falsely.

Lyons also contends that the State withheld the photograph despite a specific discovery request for its production. The trial court record does not reflect a specific request for the photograph. Although Lyons did make a specific request for both copies of the criminal histories of all of State's witness and copies of information relating to the felony convictions for the habitual offender charge, no specific written or oral request for the photograph was made on the record prior to or during trial. *See* Trial Record at 54. The only evidence that is before this court of a specific request for the photograph was trial counsel's testimony at the post-conviction hearing. *See* Record at 117, 137–38. Assuming Lyons' counsel did specifically request the photograph, Lyons has not shown that the photograph was material as to his guilt. *See House*, 535 N.E.2d at 106. "[I]mplicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." *Agurs*, 427 U.S. at 104, 96 S.Ct. at 2398, 49 L.Ed.2d at 350. Subsequently to *Agurs*, in *United States v. Bagley* (1985), 473 U.S.

667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494, the United States Supreme Court set forth the appropriate standard of review in all instances of prosecutorial failure to disclose evidence: "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result would have been different."

In the case at bar, the victim observed Lyons for several minutes, and watched him enter a taxi cab at the Greyhound bus station. Trial Record at 321 and 335–336. The taxi cab driver stated that he had picked Lyons up at this location. Trial Record at 351–52. Lyons was then traced through the taxi cab driver to the point where he was apprehended by the police a very short time later. Lyons was identified by both the taxicab driver and the victim. Trial Record at 338–39, 352, and 354–55. The victim indicated at the show-up identification, minutes after the attack, and in the trial court that he had no doubt Lyons was the person who robbed him. Trial Record at 338–39. After being placed under arrest and read his rights, Lyons stated that he was really in trouble this time. Trial Record at 368. Lyons has not shown there was no reasonable probability that had the photograph been disclosed to the defense, the result of his trial would have been different. *See House,* 535 N.E.2d at 106 (mere possibility undisclosed evidence might help defense, or might affect outcome of trial, does not establish materiality in the constitutional sense). The evidence was more than sufficient to support his conviction. Moreover, as the State points out, the photograph was merely cumulative of Lyons' sister's testimony. Lyons' sister testified that he had a beard at the time of his arrest. The post-conviction court did not err in denying Lyons' request for relief.

*Issue Two*

■ Lyons argues that the post-conviction court erred in not finding a *Batson* violation when the trial court *sua sponte* removed the only black juror from the jury panel. *Batson* prohibits the use of peremptory challenges on the basis of race.

*Batson,* 476 U.S. at 95–96, 106 S.Ct. at 1722–23, 90 L.Ed.2d at 87.

At trial, Lyons' counsel informed the Court that a juror's wife had been present during the motion to suppress hearing. Lyons expressed concern that the juror may have learned of evidence found to be inadmissible. Record at 404. The Court decided to question the juror individually. The juror stated that he had discussed nothing that happened in the courtroom with his wife. In the course of questioning the juror, the Court asked if the juror and his wife had discussed the motion to suppress hearing and the inadmissible evidence. Record at 407. Although the juror stated that he had not, the Court decided to remove the juror and replace him with the alternate juror because the Court itself had mentioned that there was some evidence not admissible against Lyons. Record at 407–08. Lyons' trial counsel then requested that the Court merely admonish the juror and allow him to remain on the panel. Record at 409–10. The trial court, however, dismissed the juror. *Id.*

■ As the State points out, the trial record is devoid of any evidence that Lyons objected at trial to the removal of the juror as constituting racial discrimination. The fact that Lyons may have raised racial discrimination in his motion to correct error is of no avail. *See Vaughan v. State* (1984), Ind.App., 470 N.E.2d 374, 378, *trans. denied* (waiver of alleged error if defendant asserts one theory of error in support of his objection at trial, and an entirely different theory of error in motion to correct error). Hence, the post-conviction court's finding of waiver was correct.

Moreover, nothing in the record indicates racial discrimination was the basis for exclusion of the juror. Rather, the trial court dismissed the juror for cause after the juror had learned that certain evidence against Lyons was inadmissible. The trial court did not abuse its discretion. *See Threats v. State* (1991) Ind.App., 582 N.E.2d 396, 398, *trans. denied* (trial court's decision on replacing juror with an alternate is reviewed for abuse of discretion); *see also French v. State* Ind., 521 N.E.2d

346, 349 (seating of alternate juror does not require consent of parties).

*Issue Three*

 Next, Lyons complains that it was error to refuse defendant's tendered instructions numbers 1 and 2. Initially, we note that Lyons has waived these arguments by failing to address the issue on direct appeal; however, because he contends that he was denied effective assistance of appellate counsel, we will address the issue. *See Hutchinson v. State* (1989), Ind.App., 540 N.E.2d 109, 111, *trans. denied*. The instructions Lyons tendered to the trial court provided:

"Instruction Number 1

The possibility of human error, or mistake, and the probable likeness or similarity of objects and persons are elements that you must act upon in considering testimony as to identity. You must carefully consider these factors passing upon the credibility that you attach to the witness' testimony, and you must be satisfied beyond a reasonable doubt as to the accuracy of the witness' identification of the defendant.

Instruction Number 2

The two greatest constituents of the reliability of identification testimony are familiarity with the person in question, and freedom from personal or party prejudice. After such familiarity and freedom from prejudice have been determined, it is the duty of the jury to estimate the capacity of the witness for perception, observation, reflection, memory and reasoning, as revealed by him upon the stand."

Trial Record at 103–04.

 The trial court's final instruction properly instructed the jury concerning the credibility of the witnesses and the weight of their testimony. *See* Trial Record at 82–83. The trial court was correct in determining that the subject of the tendered instructions was covered adequately by the instructions given. Instructions regarding the credibility of witnesses should be general in nature and equally applicable to all witnesses. *Terrell v. State* (1987), Ind.App., 507 N.E.2d 633, 636. An instruc-

tion which is directed to the testimony of a particular witness intimates an opinion on the credibility or weight of that witness' testimony, invades the province of the jury, and is error. *Id.* As our supreme court explained in *Brown v. State* (1984), Ind., 468 N.E.2d 841: "[t]he vagaries of eyewitness testimony are aptly brought before the jury for consideration by general instructions on the proper manner of weighing testimony, and by the opportunity for inclusion of that subject within the final summation of counsel." *Id.* at 843; *see Wooten v. State* (1981) Ind., 418 N.E.2d 538, 541–42 (Where defendant's requested instruction erroneously singled out for credibility analysis testimony of identification witness, and where instruction consisted of subject matter adequately covered by instruction given by court, court did not err in refusing to give requested instruction). It was not error for the trial court to refuse Lyons' tendered instructions numbers 1 and 2.

*Issue Four*

 Lyons also argues that the trial court committed error in failing to tender to the jury in the habitual stage of his trial an instruction defining "prior unrelated felony." This allegation of error was waived by Lyons' failure to object to the trial court's instruction or to tender his own written instruction to cure the alleged defect. *See Burton v. State* (1988), Ind., 526 N.E.2d 1163, 1165.

Lyons further argues that failure to instruct the jury regarding the definition is fundamental error, not waived by the failure to tender his own instruction. We disagree. The State originally charged three prior unrelated felonies. Lyons attacked two of the prior felonies alleging that they were not felonies. Trial Record at 55. The State agreed to withdraw one of them and Lyons withdrew his motion to dismiss. Trial Record at 443–44. Thus, the habitual offender count was tried with respect to only two prior felonies, uttering a forged instrument and armed robbery. Lyons does not maintain that the prior conviction for uttering a forged instrument was not a

felony conviction, and clearly it was. *See Stanford v. State* (1971), 255 Ind. 542, 543–44, 265 N.E.2d 701, 702 (sentence for crime of uttering a forged instrument two to fourteen years). Rather, Lyons challenges the trial court's failure to instruct properly on the definition of two "prior unrelated felonies," specifically on the time sequence required. Appellant's Brief at 37.

Our supreme court has rejected this claim of fundamental error. *See Burton,* 526 N.E.2d at 1165–66 (error in instructing jury does not require reversal if the conviction is properly sustainable by the evidence and jury could not have found otherwise). In *Burton,* as here, the evidence clearly demonstrates that the prior unrelated felonies were in the required sequence. Lyons' attempt to distinguish *Burton,* in that his prior unrelated felonies were closer in time then the defendant in *Burton,* is of no avail. The trial record clearly shows that the uttering of the forged instrument was committed on August 22, 1970, and a sentence of one year was imposed on March 18, 1971. Trial Record at 454 and 462. The second prior unrelated felony, armed robbery, was committed April 6, 1975, and a sentence of ten years was imposed on December 18, 1975. Trial Record at 468–69 and 471. The offense in the case at bar was committed on February 10, 1984. Trial Record at 316. The evidence clearly shows the proper sequence of conviction and sentence on the first prior felony before the commission of the second prior felony, so the jury could not have found that the sequence was other than proper. Lyons has failed to demonstrate prejudice, and thus, presents no reversible error on this issue. *See Burton,* 526 N.E.2d at 1166.

*Issue Five*

 Finally, Lyons contends that he was denied effective assistance of appellate counsel. We apply the same standard on review of appellate counsel's performance as we do in evaluating trial counsel's representation. *Heyward v. State* (1988), Ind. App., 524 N.E.2d 15, 20. The petitioner must first prove counsel's representation fell below an objective standard of reason-ableness under prevailing professional norms; and, second, the petitioner must prove that the substandard performance was so prejudicial he was deprived of a fair trial. *Burse v. State* (1987), Ind., 515 N.E.2d 1383, 1385 (citing *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.E.2d 674). Lyons must show deficient performance by counsel resulting in prejudice so serious as to deprive him of an effective appeal. *Ingram v. State* (1987), Ind., 508 N.E.2d 805, 808. Further, he must show that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different. *Id.* Lyons labors under a heavy burden.

 Lyons contends that appellate counsel was deficient in failing to preserve and brief the issues of whether the trial court erred in excusing the only black ju-ror, refusing to tender defendant's tendered instructions numbers 1 and 2, and in failing to challenge the sufficiency of the evidence to prove Lyons was an habitual offender. Counsel is not ineffective for failing to present an issue on appeal that would have been unsuccessful. *Ferrier v. State* (1987), Ind., 514 N.E.2d 285, 289; *Robinson v. State* (1986), Ind., 493 N.E.2d 765, 767. Had appellate counsel raised the issues, he would have been unsuccessful. *See Issue Two, Issue Three,* and *Issue Four.* Therefore, we affirm the post-con-viction court's denial of relief.

Affirmed.

SHIELDS and CONOVER, JJ., concur.