**Kenneth E. ALLEN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 18A02–9307–CR–353.

Court of Appeals of Indiana, Second District.

June 29, 1994.

Rehearing Denied Sept. 27, 1994.

Transfer Denied Nov. 9, 1994.

Geoffrey A. Rivers, Muncie, for appellant-defendant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

KIRSCH, Judge.

A jury convicted appellant-defendant Kenneth E. Allen of Rape,[1] a Class B felony. Allen appeals his conviction, raising the following issues for review:

1. Whether the trial court erred by denying his motion to dismiss filed under the Interstate Agreement on Detainers.

2. Whether the trial court erred by denying his motion to dismiss filed under Ind.Crim.R. 4(C).

3. Whether the trial court erred by admitting the victim's prior consistent statement.

4. Whether the trial court erred by refusing to give his proposed Instruction No. 5.

5. Whether there was sufficient evidence to support his conviction.

We affirm.

### FACTS

The facts most favorable to the jury's verdict establish that Allen was charged with one count of rape on July 30, 1991, and was arrested on August 9, 1991. Subsequent to his arrest, Allen was incarcerated in Massachusetts on a parole violation. In connection with the Massachusetts incarceration, the trial court issued a detainer warrant on January 15, 1992.

In compliance with the Interstate Agreement on Detainers (IAD),[2] Allen, while incarcerated in Massachusetts, filed an "Inmate's

---

1.  IC 35–42–4–1(1) (1992 Supp.).

2.  IC 35–33–10–4 (1988 Ed.).

Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints," on March 20, 1992. The Notice requested a final disposition of the pending Indiana rape charge. Allen was extradited to Indiana some time prior to May 6, 1992, and was brought to trial on February 22, 1993.

On February 1, 1993, Allen filed two motions to dismiss the charge against him. One motion sought dismissal under Ind.Crim.Rule 4(C), and the other motion sought dismissal under the IAD, both of which the trial court denied on February 9, 1993.

At trial, Allen's 15–year–old daughter, the victim in this case, testified that her father raped her on July 7, 1991. Allen entered his daughter's bedroom at approximately noon that day. He asked his daughter why she disliked him, why she was trying to make matters difficult, and why she did not want to be a part of the family. Allen's questions were a continuation of an ongoing argument with his daughter, the most recent flare up being the night before. When his daughter tried to ignore Allen's questions, he pulled the bed sheets back. The victim pulled them up, only to have Allen pull them back again. Allen followed the victim, who was dressed in a T-shirt and underwear, as she ran downstairs to the living room. Allen prevented the victim from putting on some shorts.

Allen again followed the victim as she ran from the living room to the kitchen. While in the kitchen, Allen continued to interrogate the victim as to why she did not like him. When she again refused to answer, he grabbed her by the arm, and dragged her upstairs to her bedroom. Despite the victim's attempts to fend off Allen's attack, he forced her to have sexual intercourse with him. Allen denied these events occurred.

After the attack, Allen left the home and picked up his wife at her place of employment. Allen's wife testified that Allen told her that their daughter was no longer a virgin, and that he was "grinning from ear to ear" when he made the declaration. Record at 390. Allen told his wife that he could

**3.** Massachusetts is a party to the IAD. *See* MASS.GEN.LAWS ANN. ch. 276, §§ 11 to 20R

"guarantee" their daughter's lack of virginity. Record at 391.

Allen then returned his wife to her place of employment. Shortly thereafter, the victim contacted her mother and told her about the rape. The victim and her mother contacted the police to whom the victim gave a written statement virtually identical to the details of the rape described above. The victim was examined at a nearby hospital where a rape study kit was completed. An Indiana State Police serologist testified at trial that his analysis of the rape study kit established that bodily fluid samples taken from the victim were consistent with a mixture of vaginal secretions and semen from the victim and Allen. The jury found Allen guilty as charged.

## DISCUSSION AND DECISION

### I. Interstate Agreement on Detainers

■ Allen first contends the trial court erred by denying his motion to dismiss based on the IAD. The statute provides in relevant part that:

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state,[3] and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty (180) days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

(West 1972).

The 180–day time period under the IAD commences on the day the defendant's written notice of the place of his imprisonment and his request for a final disposition of the charges against him is received by the prosecuting attorney and the appropriate court having jurisdiction. *Scrivener v. State* (1982), Ind., 441 N.E.2d 954, 956; *Holland v. State* (1976), 265 Ind. 216, 223, 352 N.E.2d 752, 757. In the present case, the chronological case summary reflects that on March 20, 1992, Allen filed the requisite notice of imprisonment and request for final disposition which was "referred to [the] Prosecutor's office." Record at 6. While the record does not contain independent documentation of the date upon which the prosecutor received Allen's notice, the trial court explicitly found that the notice was received on April 3, 1992. Record at 78. Accordingly, we find that April 3, 1992 was the IAD trigger date. This was the earliest date by which both the prosecutor and the court could have received Allen's notice.[4]

Case law relating to Ind.Crim.Rule 4(B) governs the determination of whether there has been a violation of a defendant's speedy trial rights under the IAD. *Pethtel v. State* (1981), Ind.App., 427 N.E.2d 891, 894, *trans. denied.* Pursuant to that case law, Allen must have been brought to trial within 180 days of April 3, 1992, unless the time was extended by periods of delay attributable to him. *See Covelli v. State* (1991), Ind.App., 579 N.E.2d 466, 469, *trans. denied.* Any continuance granted upon Allen's motion would extend the 180–day time period by the number of days of delay occasioned by the motion. *See State v. Love* (1991), Ind.App., 576 N.E.2d 623, *trans. denied.*

Allen's trial was originally scheduled to commence on June 29, 1992, within the 180–day time period which would have expired on September 30, 1992. This trial date, however, was continued on Allen's motion. A new trial date was scheduled for November 23, 1992, which the State moved to continue.

The resulting delay attributed to Allen is 147 days (June 29, 1992 to November 23, 1992). Adding 147 days to September 30, 1992 extended the IAD deadline to February 24, 1993. Allen was tried on February 22, 1993, a date preceding this new IAD deadline. Having been so tried, there was no violation of Allen's speedy trial rights created by the IAD.

Allen contends that he should not be charged with the period of delay arising from the continuance motion, citing *Huffman v. State* (1987), Ind., 502 N.E.2d 906, and *State v. Tomes* (1984), Ind.App., 466 N.E.2d 66. Both *Huffman* and *Tomes* involved a defendant's dismissal under Crim.R. 4(C). The IAD, however, is analogous to Crim.R. 4(B), not Crim.R. 4(C). *Pethtel,* 427 N.E.2d at 894. Accordingly, neither *Huffman,* nor *Tomes,* applies to the instant action. *See James v. State* (1993), Ind.App., 622 N.E.2d 1303, 1306 (case pertaining to waiver of a trial date outside the one year period stated in Crim.R. 4(C) did not apply to instant case arising under Crim.R. 4(B)).

Allen also cites *United States v. Rodriguez,* 617 F.Supp. 788 (E.D.N.Y.1985), for the proposition that any delay arising from his appointed counsel's continuance motion is not attributable to Allen. *Rodriquez* involved an interpretation of the Speedy Trial Act, 18 U.S.C. § 3161, which applies to defendants in federal courts, not here. The state law in Indiana is that "a defendant is charged with any delay resulting from a defense request for a continuance, including action taken unilaterally by the defendant's attorney." *Love,* 576 N.E.2d at 626. The delay arising from Allen's counsel's motion for continuance was properly attributable to Allen. Accordingly, Allen's motion to dismiss for failure to comply with the IAD was properly denied.

## II.  *Criminal Rule 4(C)*

■  Allen next contends that his motion to dismiss should have been granted because he

---

**4.** The trial court's finding that April 3, 1992 was the date on which Allen's notice was received was made in response to Allen's pro se motion to dismiss filed prior to the appointment of his replacement counsel. In denying counsel's February 1, 1993 motion to dismiss, the trial court

used February 20, 1992, the date Allen signed his IAD notice, as the trigger date. Because the date the notice was signed is not the proper trigger date under *Holland,* we rely on the proper date of April 3, 1992, as previously determined by the trial court.

was not brought to trial within one year from the date of his arrest as required by Crim.R. 4(C). The State, on the other hand, contends that Crim.R. 4(C) does not apply to cases like this one in which the IAD is applicable. In support of its contention the State cites *Williams v. State* (1989), Ind., 533 N.E.2d 1193, as did the trial court, and *Brown v. State* (1986), Ind., 497 N.E.2d 1049. Because *Williams* involved a motion to discharge based upon Crim.R. 4(B), it has no application here. *See James,* 622 N.E.2d at 1306.

*Brown,* however, involved a request for discharge based upon Crim.R. 4(C). As with the present case, the defendant in *Brown* was charged in Indiana and, while released on bond, was rearrested out of state. He was returned to Indiana where he filed a motion for discharge pursuant to Crim.R. 4(C). The supreme court declined to address Brown's Crim.R. 4(C) allegation of error. In so doing, the court held that "The Interstate Agreement on Detainers (IAD), Ind.Code § 35–33–10–4, rather than Ind.R.Cr.P. 4, governs the speedy trial rights of a defendant incarcerated in another jurisdiction. *Heflin v. State* (1981), 275 Ind. 197, 416 N.E.2d 121." *Brown,* 497 N.E.2d at 1050. Because the same is true here, the trial court properly denied Allen's motion for discharge under Crim.R. 4(C).

## III.   Admissibility of Victim's Statement

■   Allen next challenges the trial court's evidentiary ruling admitting, over his objection, the victim's written statement made to police at the time she reported the rape. Allen contends the statement was inadmissible hearsay and that it did not meet any of the non-hearsay definitions delineated in *Modesitt v. State* (1991), Ind., 578 N.E.2d 649.[5]

*Modesitt* adopted Fed.R.Evid. 801(d)(1) with regard to the admissibility of prior statements. More specifically, the court held that:

> "[A] prior statement is admissible as substantive evidence only if the declarant testifies at trial and is subject to cross examination concerning the statement, and the statement is (a) inconsistent with the declarant's testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (b) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (c) one of identification of a person made after perceiving the person."

578 N.E.2d at 653–54. If the declarant can be cross-examined about the statement and the statement falls under either (a), (b), or (c) above, then the statement is admissible. *Moran v. State* (1992), Ind.App., 604 N.E.2d 1258, 1261, *trans. denied.*[6]

Here, the victim could have been cross-examined about her statement inasmuch as it was introduced through her testimony. Further, the statement falls under part (b) above. It was entirely consistent with the victim's trial testimony, and was offered to rebut an implied charge that the victim resented her father and sought revenge against him. This implied charge arose from the fact that following a 12–year separation, Allen moved back into the family home and remarried the victim's mother. At the time of the rape, Allen had been back in the home for less than a year. The victim testified on cross-examination that her renewed relationship with her father was less than harmonious. She acknowledged that he was strict,

---

5.   This case was tried prior to the January 1, 1994 effective date of the Indiana Rules of Evidence. Accordingly, our decision is guided by the common law evidentiary principles in existence at the time of Allen's trial.

6.   The recent case of *Craig v. State* (1994), Ind., 630 N.E.2d 207, decided after the present case was tried and fully briefed on appeal, suggests that in addition to the requirements set forth in *Modesitt,* the prior consistent statement must also have been "made before the motive to fabri-

cate arose." 630 N.E.2d at 209; *see also Moran,* 604 N.E.2d at 1263 (Sharpnack, C.J., concurring). To the extent that *Craig* extends *Modesitt* by imposing an additional requirement on the admissibility of prior consistent statements, such requirement would not be given retroactive effect, and thus, would not be applicable here. *See Richter v. State* (1992), Ind., 598 N.E.2d 1060, 1064 (*Modesitt* ruling would not be given retroactive effect to reverse trial judge on admissibility of hearsay).

that he restricted her telephone privileges and that he monitored her friendships. She also acknowledged her belief that her father was unreasonable concerning her use of the telephone. This line of questioning implied that she might harbor resentment and have a motive for revenge against her father. Her statement made to police was properly admitted to rebut this implication.

We would also note that even if the statement was erroneously admitted, Allen suffered no harm. Because the contents of the statement were consistent with the victim's trial testimony, the statement was merely cumulative of the evidence already in the record. Allen had the opportunity to immediately cross-examine the victim concerning the contents of her statement. Furthermore, the statement was offered solely through its maker, not through a parade of witnesses. The "drumbeat of repetition" found so objectionable in *Modesitt* was not present here. Thus, any error by the trial court was harmless.

### IV. Jury Instructions

Allen next contends that the trial court erroneously refused to give the jury his tendered Instruction No. 5 regarding witness credibility. It is well settled that the giving or refusing of jury instructions lies within the sound discretion of the trial court. *Warthen v. State* (1992), Ind.App., 588 N.E.2d 545, 546. In determining whether the trial court abused its discretion by refusing to give a certain instruction, this court considers: 1) whether the tendered instruction is a correct statement of the law; 2) whether the evidence supports giving the instruction; and, 3) whether the substance of the tendered instruction is covered by other instructions that were given. *Vanness v. State* (1992), Ind.App., 605 N.E.2d 777, 780, *trans. denied.*

At trial, Allen offered the following instruction:

"In connection with your evaluation of the credibility of the witnesses, you should specifically consider evidence of resentment or anger which some State's witnesses may have towards the Defendant.

Evidence that a witness is biased, prejudiced or hostile toward the Defendant requires you to view that witness' testimony with caution, to weigh it with care, and subject it to close and searching scrutiny." Record at 111. The substance of this instruction was covered when the trial court gave the following:

"You are the exclusive judges of the evidence, the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; the memory, manner and conduct of the witness while testifying; any interest, bias, or prejudice the witness may have; any relations with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in the case."

Record at 119.

Allen argues that the instruction given by the trial court was too general, and that his "specific and more accurate" instruction should have been given instead. *Appellant's Brief* at 25. On the contrary, instructions regarding the credibility of witnesses should be general in nature and equally applicable to all witnesses. *Lyons v. State* (1992), Ind.App., 600 N.E.2d 560, 566. "An instruction which is directed to the testimony of a particular witness intimates an opinion on the credibility or weight of that witness' testimony, invades the province of the jury, and is error." *Id.* (citation omitted). The trial court properly refused to give Allen's tendered Instruction No. 5.

### V. Sufficiency of the Evidence

Finally, Allen contends there was insufficient evidence to support his conviction for rape. Allen bases his contention on the fact that the victim's version of the events differed from his, that her testimony was uncorroborated, that she had a strong motive to make a false accusation against him, and that her credibility is suspect. While the serologist's testimony flatly contradicts Allen's contention that the victim's testimony was uncorroborated, we note that a victim's

uncorroborated testimony is sufficient to support a rape conviction. *Johnson v. State* (1992), Ind.App., 587 N.E.2d 138. Furthermore, our standard of appellate review precludes us from accepting Allen's invitation to reweigh the evidence and reassess the victim's credibility as a witness. *See Dubinion v. State* (1992), Ind.App., 600 N.E.2d 136, 138, *trans. denied* ("The credibility of a witness is the prerogative of the fact finder, not this court. We will not reweigh the evidence.").

Affirmed.

FRIEDLANDER and ROBERTSON, JJ., concur.