**Aaron J. MASLIN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 35A02–9906–CR–385.

Court of Appeals of Indiana.

Nov. 15, 1999.

Transfer Denied Jan. 19, 2000.

John Pinnow, Greenwood, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Randi E. Froug, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

1. *See* IC 35–42–4–1.

## OPINION

KIRSCH, Judge

Aaron J. Maslin appeals from his conviction for rape,[1] a Class B felony, raising the following issues for review:

I. Whether the trial court erred in instructing the jury.

II. Whether the trial court erred in admitting evidence about prior uncharged misconduct.

III. Whether there is sufficient evidence to support his conviction.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On August 21, 1998, T.T. was passing time with her girlfriends at Penguin Point. Maslin approached on his motorcycle, and T.T. asked him to take her for a ride. He eventually did. While they were riding, Maslin asked T.T. if they were going to have "wild" sex again as they had done the previous weekend. T.T. said no because it would hurt. Maslin asked her several more times and received the same response.

Maslin told T.T. that he would take her back to her car after they drove through town once more. Instead, he drove her to a secluded place off the highway. T.T. told Maslin that whatever he thought was going to happen was not. Maslin stopped the motorcycle and pulled T.T. off. He turned T.T. around and the two struggled over the straps of her overalls. Maslin got the straps off T.T.'s shoulders, then pulled down her underwear. He pushed down on the back of T.T.'s neck, leaning her over the motorcycle. He then had sexual intercourse with T.T. as she cried. She told him that she needed to go home, so he stopped. When she returned to her car, she immediately told her friend that Maslin had raped her. The two girls went to the police station and made a report.

Maslin was charged with rape. After a jury trial, he was convicted and sentenced to twenty years imprisonment. He now appeals.

## DISCUSSION AND DECISION

Maslin first argues that the trial court improperly instructed the jury. He claims that the trial court erred in giving one instruction over his objection and in refusing one of his tendered instructions. We will examine each in turn.

■ Maslin first contends that the trial court erred in giving the following instruction over his objection: "You may convict the Defendant upon the uncorroborated testimony of the victim." *Record* at 83. In *Madden v. State*, 549 N.E.2d 1030, 1033 (Ind.1990), our supreme court considered the following instruction:

> "It is not essential in this cause that the testimony of the prosecuting witness be corroborated by other evidence. It is sufficient if, from all the evidence, you believe beyond a reasonable doubt that the crimes were committed by the Defendant as alleged."

*Id.* The court held that this was a proper instruction. *Id.* The instruction at issue here is substantially the same as that approved of in *Madden*. Indeed, Maslin concedes in his brief that "[t]he Supreme Court has approved instructing the jury that they could convict the defendant based on the uncorroborated testimony of the victim." *Appellant's Brief* at 13. Nonetheless, he argues that controlling precedent is erroneous and invites us to disregard it. We decline this invitation. The trial court did not err in giving this instruction. *See Groves v. Taylor*, 711 N.E.2d 861, 864 (Ind.Ct.App.1999) (court of appeals bound to follow supreme court precedent), *trans. pending.*

■ Maslin next contends that the trial court erred in refusing to give his tendered instruction which read, "You may acquit the Defendant upon the uncorroborated testimony of the Defendant." *Record* at 70. The giving or refusing of instructions lies within the sound discretion of the trial court. *Allen v. State*, 636 N.E.2d 190, 195 (Ind.Ct.App.1994), *trans. denied.* In determining whether the trial court abused its discretion by refusing to give a certain instruction, this court considers: 1) whether the tendered instruction is a correct statement of the law; 2) whether the evidence supports giving the instruction; and 3) whether the substance of the tendered instruction is covered by other instructions that were given. *Id.* Jury instructions are not to be considered in isolation, but as a whole and with reference to each other. *Hogan v. State*, 616 N.E.2d 393, 397 (Ind.Ct.App.1993), *trans. denied.*

The trial court instructed the jury as follows:

> "You are the exclusive judges of the evidence, the credibility of the witnesses and the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her ability and opportunity to observe; the manner and conduct of the witness while testifying; any interest, bias or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in this case.
>
> You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth. You should not disregard the testimony of any witness without a reason and without careful consideration. If you find conflicting testimony you must determine which of the witnesses you will believe and which of them you will disbelieve.
>
> In weighing the testimony to determine what or whom you will believe, you should use your own knowledge, experience and common sense gained from day to day living. The number of witnesses who testify to a particular fact, or the quantity of evidence on a particular point need not control your determina-

tion of the truth. You should give the greatest weight to that evidence which convinces you most strongly of its truthfulness."

Record at 79.

"The defendant is a competent witness to testify in his own behalf. In this case, the defendant has testified as a witness. It is your duty to consider and weigh his testimony in the same manner as that of any other witness."

Record at 81.

The substance of Maslin's tendered instruction was that his testimony was entitled to as much weight as that of any other witness and that it alone could provide the basis for acquittal. The trial court instructed the jury in general terms about how to weigh the witnesses' testimony and then instructed the jury that Maslin's testimony should be treated in precisely the same manner. The jury was told to try to fit the evidence to the presumption that Maslin was innocent and that all witnesses were telling the truth, and that no testimony should be disregarded without a reason, including Maslin's. The substance of Maslin's tendered instruction was covered by other instructions. The trial court did not err in refusing the instruction. *See Sweany v. State,* 607 N.E.2d 387, 389 (Ind. 1993) (not error to refuse instruction explaining that defendant's credibility might be enhanced by prior consistent statements; instructions must be general in nature and not single out any particular witness for closer scrutiny).

■ Maslin next argues that the trial court erred in admitting evidence of an uncharged prior incident involving A.K. The admissibility of evidence is within the sound discretion of the trial court. *Johnson v. State,* 671 N.E.2d 1203, 1205 (Ind. Ct.App.1996), *trans. denied* (1997). We will not reverse the trial court's decision on appeal absent an abuse of that discretion. *Id.* At trial, Maslin testified in his own defense. During his testimony, he explained that he believed that T.T. had consented to have sex with him, and that he "would never do something like [rape]

to hurt my mom, my dad." *Record* at 289. On cross examination, Maslin stated, "I don't believe rape is something you would do for anything." *Record* at 291. He also stated that he would never force a woman to do anything against her will. He unequivocally denied every detail of the incident with A.K.

On rebuttal, the State presented A.K. She testified that during the summer of 1995, Maslin came to her house while she was at home alone, demanding to talk with her. A.K. asked him to leave, but he ignored her. After she rebuked his attempt to hug her, he pushed her to the floor and straddled her. He then reached inside the bottom part of her swimsuit and fondled her. He also fondled her breasts. A.K. broke free from Maslin and grabbed a knife from the kitchen counter. A.K. demanded Maslin leave, and he did.

■ Evidence of Maslin's prior misconduct is admissible under Ind. Evidence Rule 404(a). Under Rule 404(a)(1), the accused in a criminal case may offer evidence of a pertinent trait of his own character. If he does so, the State may offer evidence in rebuttal. Rebuttal evidence is "'limited to that which tends to explain, contradict, or disprove evidence offered by the adverse party.'" *Schwestak v. State,* 674 N.E.2d 962, 964 (Ind.1996)(quoting *Isaacs v. State,* 659 N.E.2d 1036, 1041 (Ind.1995), *cert. denied* 519 U.S. 879, 117 S.Ct. 205, 136 L.Ed.2d 140 (1996)). For instance, in *Miller v. State,* 623 N.E.2d 403 (Ind.1993), the defendant was charged with raping, brutalizing, and murdering a woman. The defendant called a clinical psychologist as a witness, who testified that the defendant tried to get along with people and that there were no indications of sadistic tendencies in the defendant's psychological profile. In rebuttal, the State presented the testimony of two women who stated that they had been raped and beaten by the defendant. The supreme court noted that such testimony would not have been admissible in the State's case in chief, but that when the defendant opens

the door to such matters, the State may rebut the evidence he presents. *Id.* at 413. *See also Bond v. State,* 273 Ind. 233, 240–41, 403 N.E.2d 812, 818 (1980) ("when the accused himself offers evidence of his character ... he opens the door to the subject of his character for the trait placed in issue, and the State can introduce evidence of specific misconduct to depreciate the weight of the evidence presented by the accused....").

In this case, Maslin testified in his own defense and portrayed himself as a person of good character, concerned about his family's reputation, who would never commit rape or force a woman to do anything against her will. In his version of events, he believed T.T. consented to sexual intercourse because her refusals were equivocal. Maslin's defense and his representation that he would never commit rape opened the door to the State to present evidence in rebuttal. A.K.'s testimony that Maslin sexually assaulted her two years earlier tends to rebut Maslin's claim that he would not commit rape. Further, Maslin's denial of the incident with A.K. during his cross examination made it a proper subject for impeachment.

 Nonetheless, Maslin argues that the evidence was inadmissible under Ind. Evidence Rule 403 because its probative value was substantially outweighed by its prejudicial effect. Here, after asserting his own good character, Maslin flatly denied that the incident with A.K. ever took place. The State then presented A.K.'s testimony. The probative value of this evidence was high and two-fold: one, to rebut Maslin's own character evidence that he would never force a woman to do anything against her will, and two, to demonstrate that Maslin was being untruthful in his testimony. Because of the nature of the prior incident, the testimony was undoubtedly prejudicial, however, Maslin's own testimony opened the door to rebuttal evidence of this nature. Moreover, Rule 403 requires the prejudicial effect to *substantially* outweigh the probative value. Because of the high probative value of the

testimony for Maslin's character and truthfulness, that standard is not met here. The trial court's decision to admit the evidence was within its discretion.

 Finally, Maslin argues that there was insufficient evidence to support his conviction. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Ruth v. State,* 706 N.E.2d 257, 258 (Ind.Ct.App.1999). We look to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id.* IC 35–42–4–1 states that a person commits rape when he or she knowingly or intentionally has sexual intercourse with a member of the opposite sex when the other person is compelled by force or threat of force. Maslin asserts that there was insufficient evidence that T.T. was compelled by force or threat of force to submit to sexual intercourse.

 It is the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined. *Tobias v. State,* 666 N.E.2d 68, 72 (Ind.1996). This is a subjective test that looks to the victim's perception of the circumstances surrounding the incident in question. *Id.* The issue is whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance. *Id.* The element of force may be inferred from the circumstances. *Id.* at 70. The evidence most favorable to the judgment shows that Maslin drove T.T. to an isolated area off the highway while indicating his desire to have sex with her. She told him that she did not want to have sex and that what he wanted was not going to happen. Maslin stopped his motorcycle and pulled T.T. off, scaring her. Maslin stood behind T.T. and pulled the straps of her overalls off her shoulders as she resisted. He pushed down on the back of her neck to lean her over the motorcycle. He then engaged in

sexual intercourse with her while she cried.

T.T., a seventeen-year-old girl, was in a secluded place, at night, where she was unlikely to be rescued. Maslin ignored T.T.'s requests to take her back to her car, and continued to force himself on her after she indicated her unwillingness to have sex with him, ignoring her lack of consent and her weeping. Further, Maslin was much larger and stronger than T.T. The circumstances support an inference that T.T. perceived that Maslin was compelling her to engage in sexual intercourse by force. There was sufficient evidence to support Maslin's conviction.

Affirmed.

SHARPNACK, C.J., and RILEY, J., concur.