FILED

May 06 2020, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

J. Clayton Miller
Jordan Law, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Justin Noelker,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff,* | May 6, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2384<br><br>Appeal from the Wayne Circuit Court<br><br>The Honorable David A. Kolger, Judge<br><br>Trial Court Cause No.<br>89C01-1507-F3-49 |

**Robb, Judge.**

# Case Summary and Issue

[1]     Following a jury trial, Justin Noelker was found guilty of robbery, a Level 3 felony, and he subsequently admitted to being an habitual offender. The trial court sentenced him to fifteen years at the Indiana Department of Correction, enhanced by fifteen years for his habitual offender status. Noelker appeals, raising one issue for our review: whether the trial court erred in denying his pre-trial motion to dismiss because he was not tried within the time period allowed by the Interstate Agreement on Detainers ("IAD"). Concluding the trial court did not err in denying his motion to dismiss because, due to delays attributable to Noelker, the time period had not yet expired when he was brought to trial, we affirm.

# Facts and Procedural History

[2]     On July 28, 2015, the State charged Noelker with robbery, a Level 3 felony, for an incident that occurred on February 20, 2015. He was also alleged to be an habitual offender. At the time the information was filed, Noelker was incarcerated in Florida for allegedly stabbing two people on March 16, 2015. A warrant was issued for Noelker's arrest on the robbery charge.

[3]     Noelker was arrested on the warrant on June 19, 2017, and returned to Indiana. At an initial hearing held on June 27, a public defender was appointed to represent him and trial was set for September 26. On August 30, Noelker, by counsel, moved for a continuance of the trial date to allow additional time to

complete discovery, negotiations, and investigation. Appellant's Appendix, Volume 2 at 31. The motion was granted, and trial was re-set for November 28. On October 12, the trial court received a letter from Noelker requesting a new public defender. At a hearing on October 23, the trial court granted Noelker's request, vacated his previous public defender's appointment, and appointed a new public defender. Trial remained set for November 28. However, at a pre-trial conference on October 30, newly appointed counsel requested a continuance and trial was rescheduled for January 30, 2018.

[4] At pre-trial conferences on January 8 and March 5, 2018, Noelker's counsel again requested and was granted continuances, resulting in trial ultimately being set for June 5. In a letter to the court dated April 8, Noelker requested an immediate dismissal of the charges against him because he had been extradited from Florida on June 19, 2017 and had not yet been tried in violation of the time provisions of the IAD. Because Noelker was represented by counsel, the trial court took no action on his letter. At least five motions for continuance were requested by the defense thereafter and trial was ultimately set for May 7, 2019. At a pre-trial conference on April 10, 2019, Noelker's counsel acknowledged that from the first request for a continuance in August 2017 until the most recent trial setting, "[a]ll the continuances . . . were continuances by defense counsel so those dates don't toll toward the IAD request." Amended Transcript of Evidence, Volume II at 29-30.

[5] Subsequently, "disputes arose between the parties regarding the use of a video deposition in lieu of live trial testimony." Appellant's App., Vol. 2 at 82.

Specifically, Noelker was identified and apprehended in Florida on the Indiana warrant after Noelker's DNA was collected in Florida and sent to Indiana.[1] The parties agreed to conduct a video deposition of the person who collected the DNA and use the deposition in lieu of live testimony at trial. During the deposition, at which Noelker was present, it was discovered that a second person had mailed the sample, requiring a deposition of that person for chain of custody purposes. The week before trial, and before the second deposition could be conducted, Noelker's counsel advised the State that Noelker would not sign the stipulation allowing use of the video depositions and filed a motion to exclude. The trial court held a hearing on the motion on April 30, 2019. The State noted that one witness was in Florida and the other in Nevada and Noelker's last-minute refusal to agree to the procedure the parties had been operating under meant the State had two choices: "A. I try to fly these people in at the last second . . ., or B. . . . had I known there was going to be an objection I would have simply said well, okay, let's . . . take a new sample. We'll resubmit it and we'll just do testing a second time[.] [C]an we [fly two people in]? Uh, we can if there's enough lead time[.]" Tr., Vol. II at 40. At the conclusion of the hearing, the trial court determined that a continuance was necessary and vacated the May 7 trial date "because the State had relied to its

---

[1] Evidence collected at or near the scene of the crime included the DNA of the victim and a second person. During the investigation, there was a "CODIS hit" on the unknown DNA, preliminarily indicating the DNA was Noelker's. Tr., Vol. II at 37. The State enlisted the help of Florida officials, where Noelker was then incarcerated, in getting a DNA sample for confirmatory testing. Because identity was at issue in the case, the State needed to present the DNA evidence and therefore needed to establish a chain of custody.

detriment upon [Noelker's] earlier agreements relative to the admission of the video deposition(s) [and] could not procure the witnesses['] appearance for trial on such short notice." Appellant's App., Vol. 2 at 83.

[6] On May 8, the trial court issued an Order Regarding Matters Pertaining to Interstate Agreement on Detainers. The trial court noted that the parties agreed Noelker was before the court pursuant to the provisions of the IAD and stipulated that as of the date of the hearing, Noelker had been held for trial in Indiana for 128 days before the first defense continuance and fifty-two days remained in which to bring Noelker to trial. The court further noted that due to the circumstances, it must "determine which party bears responsibility for the days 'lost' due to the vacation of the most recent trial date." *Id.* The court reviewed the procedural history of the case to that point, noting the many continuances requested or delays prompted by Noelker,[2] and then concluded:

> [T]hese various matters set forth in the preceding pages of this order are intended not to portray [Noelker] as a "bad person" for any purpose, but are included only as factors considered by the Court in it's [sic] determination of [Noelker's] accountability for the delay cause[d] by his conscious last-minute decision to revoke his consent regarding the parties' agreement to utilize video depositions in lieu of live trial testimony. In this Court's judgment, [Noelker's] decision to withdraw his consent after the State of Indiana had relied to its detriment upon his earlier acquiescence is representative of [Noelker's] contumacy and

---

[2] In addition to requesting the replacement of his public defender in October 2017, Noelker indicated a desire to proceed pro se four times during the course of these proceedings. Each time, the trial court held a status conference, and each time, Noelker withdrew his request. *See id.* at 84-86.

> frowardness which he has demonstrated throughout the duration of these proceedings.
>
> Accordingly, the Court now finds that vacation of the May 7, 2019 trial date in this cause, as well as the resulting reasonable delay in any rescheduling of this matter for trial, shall be attributed to [Noelker].

*Id.* at 86. On May 9, Noelker's jury trial was reset to August 6. *See id.* at 11.[3]

[7] The State collected its own DNA sample from Noelker to eliminate the need for the out-of-state witnesses and Noelker's jury trial commenced as scheduled on August 6, 2019. After the jury was selected and sworn but before the presentation of evidence began, Noelker moved for dismissal based on violation of the IAD. Noelker acknowledged the May 8 order determined that the delay was attributable to the defense but objected to that determination. Noelker further acknowledged that at the time of the trial court's order the parties had stipulated fifty-two days remained in the IAD period but noted that time period had been exceeded. The trial court denied the motion to dismiss, citing its earlier order, and the trial proceeded. The jury found Noelker guilty of robbery as charged and he thereafter admitted to his status as an habitual offender. Noelker now appeals.

---

[3] Ninety-eight days elapsed between April 30 and August 6, 2019.

# Discussion and Decision

## I. Standard of Review

[8] The ruling on a motion to dismiss under the IAD is a question of law that we review de novo. *State v. Smith*, 882 N.E.2d 739, 742 (Ind. Ct. App. 2008). However, we review the findings underlying the ruling under a clearly erroneous standard. *Id.* Findings are "clearly erroneous" when the record lacks any facts or reasonable inferences to support them. *Schrenker v. State*, 919 N.E.2d 1188, 1192 (Ind. Ct. App. 2010), *trans. denied*.

## II. Interstate Agreement on Detainers

[9] "A detainer is 'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.'" *Webb v. State*, 437 N.E.2d 1330, 1331 (Ind. 1982) (quoting *United States v. Mauro,* 436 U.S. 340, 359 (1978)). The IAD is an agreement among forty-eight states, the District of Columbia, Puerto Rico, and the United States creating uniform procedures for lodging and executing a detainer. *Conn v. State*, 831 N.E.2d 828, 830 (Ind. Ct. App. 2005), *trans. denied*; Ind. Code § 35-33-10-4, Art. 2(a) (defining "state"). Both Indiana and Florida are parties to the IAD. Ind. Code § 35-33-10-4; Fla. Stat. § 941.45. The purpose of the IAD is to "encourage the expeditious and orderly disposition of outstanding charges against persons already incarcerated" in another jurisdiction. *State v. Robinson*, 863 N.E.2d 894, 896 (Ind. Ct. App. 2007), *trans. denied.* Essentially, the IAD governs the speedy trial rights of a defendant

incarcerated in a foreign jurisdiction. *State v. Thompson*, 687 N.E.2d 225, 227 (Ind. Ct. App. 1997); *see also Fisher v. State*, 933 N.E.2d 526, 529 (Ind. Ct. App. 2010) (noting that "Indiana has long held . . . that [Criminal Rule 4] does not apply when a person is incarcerated in a foreign jurisdiction"; we apply the IAD instead) (quotation omitted). In relevant part, the statute provides:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty (180) days* after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint; *provided that for good cause shown* in open court, the prisoner or his counsel being present, *the court having jurisdiction of the matter may grant any necessary or reasonable continuance*.

Ind. Code § 35-33-10-4, Art. 3(a) (emphasis added).

[10] The IAD process begins when the state bringing charges against a defendant in custody in another IAD jurisdiction files a detainer. *Robinson*, 863 N.E.2d at 896. Once the detainer is filed, the defendant may file a request for final disposition, which triggers the requirement under the IAD that he be brought to

trial within 180 days. *Fisher*, 933 N.E.2d at 529.[4] The IAD is analogous to Criminal Rule 4(B) and case law interpreting the time provisions of Rule 4(B) are instructive in determining the circumstances under which a defendant may be entitled to discharge under the IAD. *Allen v. State*, 636 N.E.2d 190, 193 (Ind. Ct. App. 1994), *trans. denied*; *see* Ind. Crim. R. 4(B) ("If any defendant held in jail . . . shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act[.]").

[11] Noelker contends the trial court erred in attributing the delay of the May 7 trial date to him, and accordingly, argues he was tried outside the 180-day time limit when he was tried on August 6. The State argues Noelker waived any error in the trial date. "A defendant applying for discharge pursuant to the IAD may be

---

[4] We note that the record before us does not indicate the filing of a formal detainer. However, in *Crawford v. State*, 669 N.E.2d 141, 148-49 (Ind. 1996), our supreme court determined that an arrest warrant is a detainer for purposes of the IAD *if* it is based upon an untried information. The trial court did issue an arrest warrant for Noelker in August 2015 after the information was filed, *see* Appellant's App., Vol. II at 22, and as it was based upon untried charges, it suffices to serve as a detainer in this case.

We also note there is no request for final disposition by Noelker apparent in the record before us. The first mention of the IAD in the record is Noelker's April 8, 2018 letter to the court requesting an immediate dismissal for failure to bring him to trial within 180 days. The IAD "'unquestionably requires delivery'" of a request for final disposition to both the court and the prosecutor in the jurisdiction that lodged the detainer, "and without delivery, the IAD's 180-day clock 'does not commence.'" *Bowling v. State*, 918 N.E.2d 701, 706 (Ind. Ct. App. 2009) (quoting *Fex v. Michigan*, 507 U.S. 43, 52 (1993)), *trans. denied*. "The procedures set forth in the IAD are not mere technicalities; thus, strict compliance is required." *Smith*, 882 N.E.2d at 742. Nonetheless, the parties agreed that Noelker was before the trial court pursuant to the provisions of the IAD, and although we are not privy to the calculations, also apparently agreed on the date the 180-day clock began to run and the days that remained. *See* Brief of Appellee at 14 n.3 (noting that but for the parties' stipulation to the days passed and days remaining, the lack of a request for final disposition "would have been fatal to [Noelker's] claim on appeal").

precluded from relief if he fails to object to a date for trial beyond the 180-day period at the time it was set or during the remainder of the time." *Reid v. State*, 670 N.E.2d 949, 952 (Ind. Ct. App. 1996), *trans. denied*. Although we agree with that general rule, the setting of the August trial date was accompanied by a specific finding that Noelker was responsible for the ensuing delay. Under those circumstances, objecting to the trial setting would have been pointless because the trial court had already explicitly decided that the trial date was within the time limitation. We decline to decide this case on waiver alone.

[12] Regardless, we hold the trial court was correct to attribute the delay to Noelker. The IAD provides that "for good cause shown in open court," the trial court "may grant any necessary or reasonable continuance" of the 180-day time period. Ind. Code § 35-33-10-4, Art. 3(a). And case law relating to Criminal Rule 4(B) makes clear that the time limit is extended by periods of delay attributable to the defendant. *Allen*, 636 N.E.2d at 193.

[13] Noelker contends the delay should not have been attributed to him for several reasons. First, he argues that the State should have obtained Noelker's specific, signed agreement to the stipulation before preparing for trial based on the stipulation because, essentially, Noelker's pre-trial conduct demonstrated he was unreliable, unpredictable, and often at odds with his attorney. *See* Appellant's Brief at 10-11. Therefore, he contends it was not reasonable for the State to rely on Noelker's counsel's agreement to the stipulation alone. We disagree. Tactical decisions are counsel's to make because "[t]he adversary process could not function effectively if every tactical decision required client

approval." *Taylor v. Illinois*, 484 U.S. 400, 418 (1988). "Although there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have—full authority to manage the conduct of the trial." *Id.* at 417-18 (footnote omitted). "Thus, decisions by counsel are generally given effect as to what arguments to pursue, what evidentiary objections to raise, and what agreements to conclude regarding the admission of evidence[.]" *New York v. Hill*, 528 U.S. 110, 115 (2000) (citations omitted). The State was most certainly entitled to rely on Noelker's counsel's agreement to the use of video depositions in lieu of trial testimony even in the absence of Noelker's personal assent to the procedure.

[14]  Second, Noelker contends the second chain of custody witness "should not have been unknown to the State in the shadow of trial" and nothing Noelker did "contributed to this significant oversight by the State." Appellant's Br. at 12-13. However, it appears the parties had agreed to conduct a video deposition of this second witness for use at trial and were working to obtain that deposition in time for trial before Noelker indicated his refusal to agree to that procedure. The late-discovered witness did not contribute to any delay of the May 7 trial.

[15]  Finally, Noelker also argues that the witnesses were not "unavailable" and could have been produced at trial. *See* Ind. Evid. Rule 804(a) (criteria for being unavailable) and (b)(1). The State conceded this was so at the April 30 hearing, but the pertinent question was not whether the witnesses were unavailable on a

larger scale; it was whether they were unavailable for the trial scheduled on May 7. As of one week before trial, the State had taken no steps to procure their attendance or to procure a second DNA analysis that would not require their attendance, relying on the agreement with Noelker's counsel that their attendance would not be necessary to introduce crucial DNA evidence. The State acknowledged it could do either, but that it would require "lead time[.]" Tr., Vol. II at 40. Noelker's refusal to go along with the stipulation counsel had entered caused prejudice to the State in the presentation of its case and necessitated a delay.

[16] In sum, it was Noelker's—and Noelker's alone—gamesmanship that necessitated the delay of the May 7 trial. The purpose of the speedy trial rules "is to assure early trials and not to discharge defendants." *Utterback v. State*, 261 Ind. 685, 687, 310 N.E.2d 552, 554 (1974). "When a defendant makes a motion for speedy trial, he is required to maintain a position which is reasonably consistent with his request." *Covelli v. State*, 579 N.E.2d 466, 470 (Ind. Ct. App. 1991), *trans. denied*. Noelker's conduct throughout this proceeding has hardly been consistent with an actual desire for a speedy trial and his late refusal to acquiesce in his counsel's reasonable trial decisions reflects a strategic ploy to obtain a discharge. Good cause was shown in open court on April 30, 2019 for delaying the trial and Noelker has not argued that the length of the ensuing delay was unreasonable. Accordingly, the trial court did not err in denying Noelker's motion to dismiss, made on the day of trial.

# Conclusion

The delay in trying Noelker was attributable to Noelker's actions and therefore the 180-day time limit of the IAD had not yet expired when he was tried on August 6, 2019. Accordingly, the trial court did not err in denying Noelker's motion to dismiss, and the judgment of the trial court is affirmed.

Affirmed.

Bradford, C.J., and Altice, J., concur.