**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Feb 01 2012, 9:09 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DOUGLAS S. WALTON**
Walton Law Office
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CLEVERSON J.R. PUNTURI, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 63A04-1106-CR-339 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE PIKE CIRCUIT COURT
The Honorable Jeffrey L. Biesterveld, Judge
Cause No. 63C01-0906-FD-330

**February 1, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a bench trial, Cleverson J.R. Punturi was convicted of Sexual Battery[1] as a class D felony. The trial court sentenced Punturi to the maximum term of three years for that offense. Punturi presents two issues for our review:

1.      Is the evidence sufficient to sustain his conviction for sexual battery?

2.      Is the three-year sentence imposed by the trial court inappropriate in light of his character and nature of the offense?

We affirm in part, reverse in part, and remand with instructions.

On June 3, 2009, Punturi visited the residence of S.H., located in Pike County, Indiana, for the purpose of returning a dog that had wandered from the residence. S.H. lived with her father at the residence.

Upon arriving at S.H.'s residence, Punturi knocked on the door. S.H. opened the door and met Punturi on the front porch. Although S.H. and Punturi knew each other from high school, they were not friends and did not know each other well. Punturi talked to S.H. for a short time and then S.H. turned to go inside. As S.H. went to close the door, she found that Punturi had followed her into the house although she had not invited him in. Once inside, Punturi and S.H. had a short conversation about a big-screen television located in the front room.

S.H. felt awkward that Punturi had followed her into the house, and she made several subtle attempts to get him to leave. At some point, S.H. told Punturi that she needed to get ready and Punturi would have to leave. Before leaving, however, Punturi asked S.H. if he

---

[1] Ind. Code Ann. § 35-42-4-8 (West, Westlaw current through 2011 1st Regular Sess.).

could hug her, and S.H. permitted him to do so. During the hug, Punturi asked S.H. if she would "make out" with him, and S.H. said "no." *Transcript* at 12. While keeping his arms around S.H., Punturi continued to go further by kissing S.H. on the neck. S.H. asked Punturi to let her go more than once and tried several times to free herself from his grasp. Punturi testified that at this point she was irritated with Punturi. Punturi then put his right hand inside the top part of S.H.'s shorts and S.H. could feel his hand on her skin as Punturi touched the upper part of her buttocks.

After S.H. was finally able to push Punturi off, she asked him to leave. By this time, S.H. was starting to cry. S.H. told Punturi that she was going to call her father. Punturi tried to apologize and asked S.H. not involve her father. Punturi then left the residence.

Later that same day, S.H.'s father called 911. Punturi was arrested and transported to the Pike County Sheriff's Department. At the jail, Indiana State Police Detective Tobias Odom interviewed Punturi. Prior to the interview, Detective Odom had reviewed a written statement given by S.H. During the interview, Punturi agreed that he tried to give S.H. a hug and "that he went a little bit too far . . . ." *Id*. at 26. Punturi further agreed with S.H.'s statement that he kissed S.H.'s neck and that his finger touched her skin on her upper buttocks. Punturi offered that S.H. asked him to stop at least three times over a short period of time.

At trial, S.H. testified that she did not want Punturi to kiss her and put his hands inside her pants. Punturi testified that he found S.H. attractive "a little bit" and that he started to have "a little bit" of feelings for her. *Id*. at 43.

On June 10, 2009, the State charged Punturi with one count of sexual battery as a class D felony and one count of residential entry as a class D felony. A bench trial was held on May 2, 2011, at the conclusion of which the trial court found Punturi guilty of sexual battery and not guilty of residential entry. At a May 23, 2011 sentencing hearing, the trial court sentenced Punturi to three years, with one and one-half years to be served on work release and one and one-half years suspended. Punturi now appeals.

1.

Punturi argues that the evidence is insufficient to sustain his conviction for sexual battery by force, a class D felony.

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State,* 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009).

To sustain a conviction for sexual battery by force, a class D felony, the State was required to prove beyond a reasonable doubt that Punturi, with intent to arouse or satisfy his own sexual desires, used force to compel S.H. to submit to his touching. *See* I.C. § 35-42-4-8. Punturi does not dispute that he touched S.H., but argues that the evidence does not establish that he used force to compel S.H. to submit to the touching or that he had the intent to gratify his sexual desires.

In considering the element of force required to establish the offense of sexual battery, this courted has noted:

4

Although an element of the offense of sexual battery is that the victim was "compelled to submit to the touching by force or the imminent threat of force," the force need not be physical or violent, but may be implied from the circumstances. *Scott–Gordon v. State,* 579 N.E.2d 602, 604 (Ind. 1991). Evidence that a victim did not voluntarily consent to a touching does not, in itself, support the conclusion that the defendant compelled the victim to submit to the touching by force or threat of force. *Bailey v. State,* 764 N.E.2d 728, 730 (Ind. Ct. App. 2002), *trans. denied.* However, "it is the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined." *Tobias v. State,* 666 N.E.2d 68, 72 (Ind. 1996). "This is a subjective test that looks to the victim's perception of the circumstances surrounding the incident in question." *Id.* "The issue is thus whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance." *Id.*

*Chatham v. State*, 845 N.E.2d 203, 206-07 (Ind. Ct. App. 2006). Further, the fear experienced by the victim must precede the touching for the fear to indicate that the victim was compelled to submit to the touching by force or the imminent threat of force. *Id. at* 207.

Here, although S.H. did not object to Punturi's request for a hug, during Punturi's embrace he kissed S.H. on the neck and put his hand inside her pants on the back side. S.H. asked Punturi to stop and tried to push him away. Punturi, however, did not retreat from his embrace and touching of S.H., causing S.H. to make at least three demands for Punturi to stop. Although S.H. testified that initially she was irritated by Punturi's conduct, when he refused to release her from his grasp and continued to touch her in a way she was uncomfortable with, she began to cry. It seems eminently reasonable under the circumstances that an individual in S.H.'s position would fear another's continued embrace and touching after demands that such touching cease. The evidence in the light most favorable to the conviction supports the finding of force necessary to sustain the conviction.

5

Punturi also argues that the evidence does not establish that he intended to satisfy his own sexual desires when he touched S.H. A person's intent may be determined from his actions and the natural consequences of those actions and inferred from circumstantial evidence. *Chatham v. State*, 845 N.E.2d 203. The intent to gratify required by statute must coincide with the conduct. *Id.* That is, the intent to gratify must be the purpose or motivation for the conduct. *Id.*

Here, the evidence showed that Punturi complimented S.H. on her appearance before he entered her home without an invitation. As he was approaching to embrace S.H., Punturi asked S.H. if she wanted to "make out," and then he kissed her neck. *Transcript* at 12. As part of his embrace, Punturi placed his right hand inside the upper part of S.H.'s pants such that she could feel his hand on her skin as Punturi touch the upper part of her buttocks. During his jailhouse interview, Punturi told Detective Odom something to the extent that he was "excited" during his encounter with S.H. *Id.* at 27. At trial, Punturi testified that he found S.H. attractive and that he when he gave her a hug he started to have "a little bit" of feeling for her. *Id.* at 43. We conclude that this evidence sufficiently establishes that he harbored an intent to satisfy his own sexual desires when he sought to and did in fact embrace S.H.

Having concluded that sufficient evidence was presented to establish the force and intent necessary for the offense of sexual battery, we affirm Punturi's conviction for sexual battery as a class D felony.

2.

6

Punturi argues that the sentence imposed is inappropriate in light of his character and the nature of the offense.

We have the constitutional authority to revise a sentence if, after careful consideration of the trial court's decision, we conclude the sentence is inappropriate in light of the nature of the offense and character of the offender. *See* Ind. Appellate Rule 7(B); *Anglemyer v. State,* 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g,* 875 N.E.2d 218. Even if a trial court follows the appropriate procedure in arriving at its sentence, we maintain the constitutional power to revise a sentence we find inappropriate. *Hope v. State,* 834 N.E.2d 713 (Ind. Ct. App. 2005). Although we are not required under App. R. 7(B) to be "extremely" deferential to a trial court's sentencing decision, we recognize the unique perspective a trial court brings to such determinations. *Rutherford v. State,* 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). On appeal, Punturi bears the burden of persuading us that his sentence is inappropriate. *Rutherford v. State,* 866 N.E.2d 867.

We observe that in sentencing Punturi, the trial court noted as the sole mitigating factor that Punturi has no prior criminal history. As aggravating factors, the trial court noted the nature of the crime and that Punturi, "by his actions in this case, show[ed] a lack of remorse." *Transcript* at 72. With regard to the nature of the offense, the court observed that "[t]his was an unwanted groping . . . against the victim's will." *Id.*

With regard to the character of the offender, Punturi's lack of a criminal history is quite telling. Under the circumstances, Punturi is likely to respond to short-term imprisonment or probation. We further note that Punturi has a support system in place and

7

that his adoptive parents are being helpful and supportive, encouraging Punturi to obtain his GED and secure employment.

With regard to the nature of the offense, we respectfully disagree with the trial court's emphasis on the nature of the offense as an aggravating factor. While the touching amounted to an unwanted groping, the facts of the case are not remarkable. We further note that S.H. suffered no physical harm. We do not condone Punturi's conduct, but neither do we find it deserving of the maximum three-year sentence imposed by the trial court. With regard to a showing of lack of remorse, we defer to the trial court's assessment in this regard. We do note that Punturi adheres to his version of events and continues to believe that while he may have gone "a little bit too far," he did nothing wrong. *Id*. at 26.

In light of the foregoing, we conclude that the three-year sentence (with one and one-half years served on work release and one and one-half years on probation) is inappropriate. Our assessment of the nature of the offense and character of the offender leads us to conclude that the advisory sentence of one and one-half years is appropriate.[2] We agree with the trial court's decision that Punturi's sentence should be evenly served between work release and probation. We therefore remand to the trial court with instructions to amend Punturi's sentence in accordance with this opinion.

Judgment affirmed in part, reversed in part, and remanded with instructions.

RILEY, J., and MATHIAS, J., concur.

---

[2] Ind. Code Ann. § 35-50-2-7 (West, Westlaw current through 2011 1st Regular Sess.) ("[a] person who commits a Class D felony shall be imprisoned for a fixed term of between six (6) months and three (3) years, with the advisory sentence being one and one-half (1 ½ ) years").