Carl M. TOBIAS, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 72S05–9605–CR–395.

Supreme Court of Indiana.

May 24, 1996.

Robert M. Hammerle, Joseph M. Cleary, Hammerle, Foster, & Long–Sharp, Indianapolis, for Appellant.

Pamela Carter, Attorney General, Jodi Kathryn Rowe, Deputy Attorney General, Indianapolis, for Appellee.

ON PETITION TO TRANSFER

DICKSON, Justice.

Following a jury trial, defendant-appellant Carl M. Tobias was found guilty of rape, a class B felony, and sexual battery, a class D felony. In the direct appeal of his convictions, the defendant presented multiple issues, one of which the Court of Appeals found dispositive. In *Tobias v. State*, 659 N.E.2d 246 (Ind.Ct.App.1995), the Court of Appeals reversed and remanded for a new trial, finding trial court error in an instruction to the jury as to the definition of reasonable doubt. Faced with conflicting precedent in *Winegeart v. State*, 644 N.E.2d 180 (Ind. Ct.App.1994), and *Jackson v. State*, 657 N.E.2d 131 (Ind.Ct.App.1995), the Court of Appeals elected to follow *Winegeart*, a case in which we have granted transfer and in which we today issue a decision contrary to that of the Court of Appeals. We grant the State's Petition to Transfer.

In this appeal from his convictions, the defendant has presented argument upon the following issues: 1) the validity of the reasonable-doubt instruction, 2) the admission of polygraph evidence, 3) sufficiency of evidence, and 4) ineffective assistance of trial counsel.

## 1. The Reasonable–Doubt Instruction

The defendant contends that the trial court committed fundamental error in its jury instruction explaining the concept of reasonable doubt. Because the defendant did not object to the instruction at trial, this appellate claim is subject to procedural default, Ind. Criminal Rule 8(B), unless the error is deemed fundamental. *See Townsend v. State*, 632 N.E.2d 727, 730 (Ind.1994). Claims of error in a trial court's reasonable-doubt instruction are subject to procedural default. *See Winegeart v. State*, 665 N.E.2d 893, 895 (Ind.1996). For an error to be fundamental, it must "be so prejudicial to the rights of a defendant as to make a fair trial impossible." *See Barany v. State*, 658 N.E.2d 60, 64 (Ind.1995). The challenged instruction in the present case is not characterized by any blatant defect that would render it fundamental error. We therefore deem the claim of error procedurally default-

ed because of the failure to assert a proper, timely objection at trial.

## 2. Admission of Polygraph Information

■ The defendant contends that the trial court committed fundamental error by admitting into evidence Defense Exhibit B, a police report containing references to the defendant's refusal to take a polygraph examination and reflecting that the complaining witness was given a polygraph examination and found to be truthful. Acknowledging that the exhibit was offered into evidence by defense counsel, the defendant alleges that fundamental error occurred and that the error "is so blatant and prejudicial" that Tobias has been denied the protection of the Due Process Clause. Brief of Appellant at 29. Although failure to make a proper contemporaneous objection usually results in procedural default, such a failure will not preclude appellate review of a trial court action that constitutes fundamental error—a "substantial blatant violation of basic principles rendering the trial unfair to the defendant." *Townsend v. State*, 632 N.E.2d 727, 730 (Ind. 1994). The State responds that any error was not fundamental, because Exhibit B never reached the jury. In his reply brief, the defendant does not dispute the State's assertion that the jury was never exposed to the references to the polygraph examinations, which we therefore assume to be true.

Because Exhibit B was not passed to the jury and its references to polygraph examinations apparently were never discussed in the testimony, we decline to find that the defendant's fair trial rights were prejudiced. The alleged error is not fundamental, and thus the claim of error was waived by the actions of the defense at trial.

## 3. Sufficiency of Evidence

The defendant contends that the evidence was insufficient to prove the element of force necessary for his conduct to constitute the crimes of sexual battery and rape.

■ An appellate claim of insufficient evidence will prevail if, considering the probative evidence and reasonable inferences that support the judgment, and without weighing evidence or assessing witness credibility, we

conclude that no reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Case v. State*, 458 N.E.2d 223, 226 (Ind.1984); *Loyd v. State*, 272 Ind. 404, 407, 398 N.E.2d 1260, 1264 (1980), *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

■ Count I of the grand jury indictment charged the offense of rape, essentially alleging that the defendant "intentionally [had] sexual intercourse with a member of the opposite sex when the other person [was] compelled by force...." Record at 7. Count II charged sexual battery, asserting that the defendant "with intent to arouse or satisfy [the defendant's] own sexual desires did touch another person when that person [was] compelled to ... submit to the touching by force...." Record at 8. The defendant acknowledges that the element of force may be inferred from the circumstances. *See Jones v. State*, 589 N.E.2d 241 (Ind. 1992); *Smith v. State*, 500 N.E.2d 190 (Ind. 1986).

The evidence favorable to the judgment is that two sixteen-year-olds, C.U. and her boyfriend, R.C., intended to spend the night camping together at Hardy Lake in Scott County. C.U. lived with her father and stepmother and had told them she would be spending the night at a girlfriend's house. Instead, C.U. and R.C. went to Hardy Lake, where they registered for a campsite despite a rule setting 18 years as the minimum age for campers. They obtained a secluded campsite, where they erected a small tent, drank at least eight cans of beer they had brought with them, and engaged in sexual intercourse. Later, upon complaints by other campers of noise coming from the couple's campsite, Department of Natural Resources employees Jamie Miller and Carl M. Tobias, the defendant who was age 58, were sent in a pickup truck to investigate. They pulled into the campsite occupied by the juveniles and shined their truck headlights on the tent. R.C. stepped outside of the tent first; then, upon the defendant's request, C.U. came out, dressed only in a long T-shirt. After asking for their identification and informing them that another camper had alleged that a rape had occurred at the campsite, the defendant

took C.U. into the woods adjacent to the campsite, away from the others, purportedly to talk with her away from R.C. There C.U. told him that she had not been raped. Stating that he needed to check to see if she had been raped, the defendant touched C.U.'s breasts and inserted his finger into her vagina. Scared and confused, she asked him to stop. The defendant then stated that he was taking C.U. to the office to call her parents to make sure she had permission to be staying at the facility all night, and they returned to the campsite. C.U. and R.C. went into the tent, where C.U. put on shorts and shoes. C.U. started to cry and told R.C. that the defendant had just fondled her when they were in the wooded area. She asked her boyfriend to accompany her to the office, but the defendant said that this was not necessary and that R.C. should stay and clean up the campsite. Miller, the defendant's coworker, remained at the campsite with R.C. The defendant drove C.U. to the park office, where he unlocked the office door, grabbed her arm and took her into the dark building. The defendant locked the door behind them, led her to a picnic table, and began kissing her and touching her breasts. C.U. asked the defendant why he had to do this and asked him to stop touching her. He said no. He then told her to remove her shorts, which she did. The defendant then grabbed C.U.'s arm and pushed her against the top of the picnic table, removed his own pants, pulled her legs apart with his hands, and "pushed inside" of C.U. with his penis. C.U. told him she didn't want "to do it" and asked the defendant to stop. He again said no, and he did not stop. When the defendant was finished, he wiped himself off with a paper towel and instructed C.U., who was crying, to pull up her shorts. The defendant then drove her back to the campsite. After the defendant and Miller left, C.U. ran to the tent and, crying hysterically, told R.C. what had happened. The two juveniles immediately packed up, left the campsite, and drove to the home of a friend of C.U.'s. C.U. told her friend that she had been raped, and the friend's mother called the police. C.U. was taken to a hospital, where samples were obtained for the sexual assault evidence collection kit. The examining physician detected three "fingertip like bruises" on C.U.'s right thigh and an abrasion on her lower right leg. The police, in the ensuing investigation, collected paper towels from the Hardy Lake camp office floor, counter, and trash container, as well as C.U.'s underwear and shorts. The defendant's DNA genetically matched DNA taken from seminal material found on the paper towels and on C.U.'s underwear and shorts and from spermatozoa found in C.U.'s vaginal wash and on cervical swabs taken at the hospital.

The defendant testified, denying that he touched C.U. and stating that he took her from the campsite to call her parents. He stated that because the office was locked, C.U. placed a call from the adjacent pay phone, handing the phone to the defendant and telling him that her stepmother was on the phone. The woman on the other end of the line told him that C.U. had permission to be camping there, whereupon defendant took C.U. back to the campsite. Telephone records indicated that no phone call was placed from Hardy Lake during the time he claimed C.U. made this call.

■ The defendant asserts that the State failed to prove beyond a reasonable doubt that he used force or the imminent threat of force in committing the alleged acts. Each of the charged offenses required the State to prove that C.U.'s submission was compelled by force. *See* Record at 7–8. The pertinent language of the rape statute states:

A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

(1) The *other person is compelled* by force or imminent threat of force;

(2) The *other person is unaware* that the sexual intercourse is occurring; or

(3) The *other person is so mentally disabled or deficient* that consent to sexual intercourse cannot be given;

commits rape, a Class B felony.

Ind.Code § 35–42–4–1 (emphases added). The sexual battery statute states, in part:

A person who ... touches another person when *that person is:*

(1) *Compelled* to submit by force or the imminent threat of force; or

(2) So mentally disabled or deficient that consent to the touching cannot be given;

commits sexual battery, a Class D felony. Ind.Code § 35–42–4–8 (emphasis added). The language emphasized above demonstrates that it is the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined. This is a subjective test that looks to the victim's perception of the circumstances surrounding the incident in question. The issue is thus whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance.

Evidence of the defendant's guilt of both charged offenses was presented by C.U.'s testimony that he touched her breasts, digitally penetrated her vagina, and performed sexual intercourse on her—all after demanding her compliance; physically forcing himself upon her; and ignoring her lack of consent, verbal resistance, and requests for him to stop. Here we have a sixteen-year-old girl clandestinely participating in an escapade of overnight camping, drinking, and sex with her boyfriend after deceiving her parents as to her whereabouts. She was suddenly caught in the midst of this deception when confronted by two adult men—one of whom was the defendant, age 58—representing and asserting the enforcement authority of the campground. He took her to secluded, dark places—including the remote, locked office—and subjected her to his sexual acts.

We conclude that the evidence favorable to the judgment was sufficient to enable a reasonable jury to find the element of compulsion by force to have been proven beyond a reasonable doubt.

### 4. Ineffective Assistance of Trial Counsel

The defendant contends that he was denied the effective assistance of trial counsel guaranteed by the federal and state constitutions. He supports this claim with argument that counsel was ineffective in three particulars: failing to object to the reasonable-doubt instruction; offering into evidence a police report that contained references to polygraph examinations; and both eliciting and failing to object to hearsay testimony repeating C.U.'s account of what happened.

The defendant acknowledges that the determination of whether he was denied effective assistance of counsel is governed by the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).[1] The first prong examines whether counsel's performance was deficient in light of prevailing professional norms. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. To satisfy the second prong, a defendant must show that this deficient performance prejudiced the defense to such an extent as to deprive the defendant of a fair trial—one with a reliable result. *Id.* at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 697–98. To prevail on a claim of ineffective assistance of counsel, a defendant must establish both prongs. *Id.* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699.

■ The defendant's first allegation of counsel's deficiency, that he received ineffective assistance because his trial lawyer failed to object to the reasonable-doubt instruction that was given at trial, is inadequate to establish ineffective assistance of counsel. The instruction did not violate the minimum standards required by the U.S. Constitution. In our companion decision, *Winegeart v. State*, 665 N.E.2d 893 (Ind.1996), we discuss a challenge to a similar reasonable-doubt instruction and conclude that no reasonable likelihood exists that the jury applied the instructions to convict the defendant upon less proof of guilt than that required by the Due Process Clause. The challenged instruction in the present case is even less problematic than the one permitted in *Winegeart*, because instead of the *Winegeart* instruction's phrase "do not *feel satisfied* to a moral certainty," this instruction uses "do not *feel convinced* to a moral certainty." The instruction here thus more closely resembles

---

1. The defendant does not assert the existence of any separate, independent standard for evaluating a claimed violation of the right to counsel under Article I, Section 13 of the Indiana Constitution. The claim is therefore waived. *See Light v. State*, 547 N.E.2d 1073, 1076 (Ind.1989).

the phrase "an abiding conviction, to a moral certainty," which was permitted in *Victor v. Nebraska*, 511 U.S. 1, ——, ——, ——, 114 S.Ct. 1239, 1244, 1248, 1249, 1251, 127 L.Ed.2d 583, 597, 600, 601 (1994). Furthermore, like the instruction in *Winegeart*, instruction here guided the jury to evaluate reasonable doubt upon a consideration of all the evidence, to disregard imagination and speculation, and to consider the "hesitate to act" benchmark, factors that were significant to the *Victor* court in permitting an instruction with "moral certainty" language. *See Winegeart*, 665 N.E.2d at 895. Trial counsel was not deficient in failing to object to this instruction.

 As to the defendant's second and third allegations of error, we find the second prong of *Strickland* to be determinative. The defendant suffered no prejudice as to his second claim of error, the admission of the exhibit containing references to polygraph examinations, because, as noted earlier in this opinion, this information was never communicated to the jury. The final claim of ineffective assistance arises from the defense counsel's role in the admission of hearsay testimony. The defendant argues that prejudice resulted from various witnesses being permitted to repeat C.U.'s out-of-court allegations describing the crimes. We need not decide whether such testimony was improper or, if so, whether counsel's conduct was deficient, because we find that the presence of such evidence was not reasonably likely to have affected the outcome of the defendant's trial. The State's case received strong support from the other trial testimony and exhibits—particularly the DNA evidence, which almost conclusively disproved the defendant's testimony and corroborated that of the prosecuting witness. The defendant was not so prejudiced as to be deprived of a trial the result of which was reliable. Absent a sufficient demonstration of prejudice, we need not examine the actual effectiveness of counsel. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699. We reject the defendant's claim of ineffective assistance of trial counsel.

**Conclusion**

Transfer is granted. The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, and SELBY, JJ., concur.

DeBRULER, J., concurs in result for the reasons stated in his separate opinion in *Winegeart v. State*, 665 N.E.2d 893, 904 (Ind. 1996).