**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 31 2014, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DEBORAH MARKISOHN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TYRONE ICE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No.  49A04-1305-CR-254 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila Carlisle, Judge
Cause No. 49G03-1301-FB-4835

**March 31, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**PYLE, Judge**

## STATEMENT OF THE CASE

Tyrone Ice ("Ice") appeals his convictions, after a jury trial, for attempted rape[1] and two counts of criminal deviate conduct[2], all Class B felonies.

We affirm.

## ISSUE

Whether sufficient evidence supports Ice's convictions for attempted rape and criminal deviate conduct.

## FACTS

On January 20, 2013, Ice was at home with twenty-one-year-old J.S., the daughter of his girlfriend. She had just returned from spending the night out with her cousin. J.S. came into the house and changed into basketball shorts and a tee shirt. She got a pillow and blanket and laid down on a couch to watch television. Ice sat on a recliner that was near the couch. He asked J.S. if she had a Black & Mild cigar. After she responded yes, Ice got the cigar out of J.S.'s purse and sat on the couch with her.

Ice and J.S. eventually started "cracking jokes" and wrestling with each other. (Tr. 26). J.S. testified that this was normal behavior between her and Ice. However, J.S. began to feel uncomfortable during the wrestling when Ice removed her blanket, stretched her legs on the couch, and laid on top of her. Ice attempted to kiss J.S., but she would not let him. Ice then picked J.S. up, put her over his shoulder, and took her to a bedroom. J.S. testified that she became more nervous when Ice picked her up.

_____

[1] Ind. Code §§ 35-41-5-1, 35-42-4-1(a)(1).

[2] Ind. Code § 35-42-4-2(a)(1).

2

When they arrived at the bedroom, Ice threw J.S. down on a bed. Ice got on top of J.S. and began touching her and telling her that she was pretty. He then put his hand up J.S.'s shorts and into her underwear. J.S covered her face. She could not move because Ice was lying on her legs. J.S. testified that she was afraid that Ice was going to hurt her.

Ice then snatched J.S.'s shorts and underwear off and put his tongue in her vagina. J.S. testified again that she was afraid and did not want to get hurt. The telephone rang, and Ice stopped performing the sex act. J.S. got up, pulled up her shorts, and went to another bedroom to answer the phone. Ice followed her to the other bedroom. J.S.'s mother called, and J.S. tried to prolong the conversation. J.S. testified that she did not tell her mother what had happened because she would still be alone with Ice and was afraid of what he would do if she told. J.S. asked her mother to come straight home, hung up the phone, and tried to leave the bedroom. Ice grabbed J.S., threw her on a bed, and laid on top of her again.

Ice again removed J.S.'s shorts and underwear, put his finger in her vagina, and once again put his tongue in J.S.'s vagina. Eventually, Ice stood up and pulled his pants down. Ice told J.S. that he wanted to rub his penis on her vagina. She pushed on his stomach and told him to get off of her. Ice put his penis on J.S.'s vagina. J.S. testified that "all he had to do was push and it would've have been inside of me." (Tr. 54). Ice did not stop rubbing his penis on J.S.'s vagina until J.S. asked why Ice would do something like this to J.S.'s mother. Ice responded that she was right, and he stopped. J.S. eventually called a friend, left the house, and called the police.

3

On January 23, 2013, the State charged Ice with two (2) counts of criminal deviate conduct, as Class B felonies, rape, a Class B felony, criminal confinement, a Class D felony, and sexual battery, a Class D felony. The trial court conducted a jury trial April 15 through April 16, 2013. The jury convicted Ice of both counts of criminal deviate conduct, a lesser included offense of attempted rape, and sexual battery. The jury acquitted Ice of criminal confinement. At sentencing, the trial court vacated the sexual battery conviction and sentenced Ice to fifteen (15) years on each Class B felony. All counts were ordered served concurrently. Ice now appeals.

## DECISION

Ice argues that the State did not present sufficient evidence to sustain his convictions. Specifically, Ice claims that the evidence was insufficient to prove that he compelled J.S. to submit to the sex acts by force or imminent threat of force.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences *supporting* the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (internal quotation marks and citations omitted).

4

As charged, Ice's acts constituting attempted rape and criminal deviate conduct must have been accompanied by force or imminent threat of force. Ind. Code §§ 35-42-4-2(a)(1); 35-42-4-1(a)(1). The force used in committing rape or criminal deviate conduct need not be violent or physical and may be inferred from the circumstances. *Smith v. State*, 500 N.E.2d 190, 192 (Ind. 1986); *Filice v. State*, 886 N.E.2d 24, 37 (Ind. Ct. App. 2008), *trans. denied*. Our Indiana Supreme Court explained in *Tobias v. State*, 666 N.E.2d 68, 72 (Ind. 1996) that:

> [I]t is the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined. This is a subjective test that looks to the victim's perception of the circumstances surrounding the incident in question. The issue is thus whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance.

Here, the evidence shows that Ice threw J.S on a bed twice, snatched her shorts and underwear off twice, and placed his finger and tongue in her vagina on two occasions. Further, Ice rubbed his penis on J.S.'s vagina. He continued to rub his penis on her vagina even though J.S. tried to push him off and told him more than once to stop. While acknowledging that she and Ice frequently joked around with each other, J.S. clearly testified about her initial unease with Ice's actions and her escalating fear as the incident progressed. She even went as far as to prolong the telephone conversation with her mother, requesting that she come straight home.

Ice testified that he did not do anything to J.S. that he felt she did not want to do. But it is to J.S.'s perspective that we look to determine forceful compulsion. *See, e.g.*, *id.* A jury could reasonably infer from J.S.'s testimony that Ice engaged or attempted to

engage in the charged sex acts by force or imminent threat of force. Accordingly, we affirm Ice's convictions.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.