**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**BERNICE A. N. CORLEY**
Appellate Panel Attorney
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**IAN McLEAN**
Deputy Attorney General
Indianapolis, Indiana

FILED
Sep 11 2014, 9:03 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

THOMAS BOOKER,                    )
                                 )
        Appellant-Defendant,      )
                                 )
            vs.                   )   No. 49A02-1402-CR-107
                                 )
STATE OF INDIANA,                 )
                                 )
        Appellee-Plaintiff.       )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Sheila A. Carlisle, Judge
The Honorable Stanley E. Kroh, Magistrate
Cause No. 49G03-1310-FB-65733

**September 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

A jury convicted Thomas Booker of class B felony criminal deviate conduct stemming from his sexual assault of a partially paralyzed stroke victim. He now appeals, challenging the sufficiency of the evidence to support his conviction and claiming that fundamental error occurred when the trial court admitted certain statements that he made to police. We affirm.

**Facts and Procedural History**

In 2013, forty-nine-year-old B.M. suffered a stroke, which left her speech-impaired, paralyzed on her left side, and wheelchair-bound. After a lengthy hospital stay, she was transferred to Rosewalk Village ("Rosewalk") skilled nursing facility in Indianapolis for rehabilitation. During her three-month stay at Rosewalk, her adult son Kendall often visited her. During one visit, Kendall encountered Booker, whom he and B.M. had known as an acquaintance from church. Booker explained that his wife was a patient at Rosewalk, and he asked the location of B.M.'s room. Thereafter, Booker visited with Kendall and B.M. from time to time.

Between 9:00 and 10:00 p.m. on Friday, October 4, 2013, after B.M. had been tucked in by Rosewalk staff, Booker entered her room. She awoke to find Booker sitting on her bed. Booker touched her breasts and digitally penetrated her vagina, and she asked him to stop and to leave. At first, he did not stop. She then told him that Kendall was due to arrive soon, and he left.

The next day, B.M. reported the incident to Rosewalk personnel. By Sunday, Kendall was aware of the incident. When he came to visit his mother, he saw Booker and confronted

2

him. He told a Rosewalk employee to call the police because Booker was the person who had assaulted his mother. When Booker attempted to get to his vehicle to leave, Kendall took his keys from him. Booker then pled with Kendall to give him the keys because the police were on their way. When Kendall refused, Booker fled to a nearby building, where police apprehended him.

Footage from a hallway surveillance camera showed Booker entering B.M.'s room on the night of the assault. During an interrogation, Booker admitted to Detective Michael Hewitt that he had entered B.M.'s room that night.

The State charged Booker with class B felony criminal deviate conduct and class D felony sexual battery. A jury convicted him of class B felony criminal deviate conduct, and he now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

**Section 1 – Sufficiency of Evidence**

Booker challenges the sufficiency of the evidence to support his conviction for criminal deviate conduct. When reviewing a challenge to the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). Rather, we consider only the evidence and reasonable inferences most favorable to the verdict and will affirm the conviction "unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id*.

To convict Booker of class B felony criminal deviate conduct, the State was required to establish beyond a reasonable doubt that he "knowingly or intentionally [caused] [B.M.] to

3

perform or submit to deviate sexual conduct when [she was] compelled by force or imminent threat of force." Ind. Code § 35-42-4-2(a)(1) (1998).[1] The presence or absence of forceful compulsion is to be viewed "from the victim's perspective, not the assailant's." *Tobias v. State*, 666 N.E.2d 68, 72 (Ind. 1996). In other words, the issue is "whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance." *Id*.

Booker first asserts that the evidence is insufficient to support the element of forceful compulsion. In this vein, he alleges that because B.M. neither pushed him away nor pressed the nurse's call button, there is no evidence that she was forcibly compelled to submit. B.M.'s ability to physically resist Booker as he digitally penetrated her vagina and fondled her breasts must be evaluated in light of her drowsy condition and her physical limitations. She is a wheelchair-bound stroke victim with paralysis on her left side. Her stroke also left her with impaired speech, which she described as "slower" and which the transcript shows to be low in volume. Tr. at 52. She was asleep in her room for the night when she awoke to find Booker sitting on her bed. Her condition impaired her ability to push him away, press alert buttons, or adequately project her voice to scream for help. She did manage to tell Booker to stop and to leave. He did not. Instead, he stood up and began to unfasten his pants. He left only after she lied and told him that her son would be arriving soon. At trial, she testified that she lied to Booker so that he would leave. *Id*. at 66-67. Based on this

---

[1] "Deviate sexual conduct" is an act involving "the penetration of the sex organ or anus of a person by an object." Ind. Code § 35-31.5-2-94(2) (2012). A finger is an object for purposes of defining deviate sexual conduct. *Harwood v. State*, 555 N.E.2d 513, 515 (Ind. Ct. App. 1990).

evidence, the jury could reasonably infer that B.M. felt forcibly compelled to submit to Booker's advances.

Additionally, Booker characterizes B.M.'s testimony as dubious and asks that we impinge upon the jury's function to judge her credibility by applying the "incredible dubiosity" rule, which states,

> If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed. This is appropriate only where the court has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. Application of this rule is rare and the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it.

*Fajardo v. State*, 859 N.E.2d 1201, 1208 (Ind. 2007) (citations and quotation marks omitted).

Booker characterizes inconsistencies in B.M.'s pretrial statements and trial testimony as rendering her account inherently improbable and equivocal. For example, he claims that she equivocated concerning the position of the door to her room. Any equivocations are irrelevant given the surveillance video showing that Booker entered her room. Booker also cites inconsistencies in B.M.'s testimony about whether he was in the act of digitally penetrating her vagina when she awoke or whether he did so right after she awoke. This minor inconsistency does not implicate *whether* he digitally penetrated her. Likewise, B.M.'s testimony concerning whether Booker had unzipped his pants or had merely begun to unfasten his pants is a minor inconsistency that does not negate an element of the offense of which he was convicted.

5

Moreover, the incredible dubiosity rule applies only where there is a complete lack of circumstantial evidence. Here, the hallway surveillance camera footage showed Booker entering B.M.'s room at a time and date that corroborated her account of the assault. Also, Kendall's testimony concerning his encounter with Booker shows Booker's consciousness of guilt. B.M. reported the Friday night assault to Rosewalk staff the day after it happened. That Sunday, Kendall was aware of the assault and confronted Booker at Rosewalk. He instructed a Rosewalk employee to "call the police because this is him." Tr. at 112. When Booker attempted to leave, Kendall took his keys and accused him of assaulting his mother. Booker never denied the accusations but instead pled with Kendall to give him his keys so that he could leave before police arrived. When Kendall refused, Booker fled to a nearby building. "Flight shows consciousness of guilt." *Tuggle v. State*, 9 N.E.3d 726, 736 (Ind. Ct. App. 2014), *trans. denied*.

Based on the foregoing, we conclude that B.M.'s testimony is neither inherently improbable nor lacking in corroboration. Thus, the incredible dubiosity rule is inapplicable, and we must decline Booker's invitation to reweigh evidence and judge credibility. The evidence most favorable to the verdict is sufficient to support his conviction.

## Section 2 – Admission of Evidence

Booker also maintains that the trial court committed reversible error in admitting a statement that he made to Detective Hewitt during interrogation conceding that he went into B.M.'s room on the night that she was molested. Ordinarily, we review a trial court's ruling on the admissibility of evidence using an abuse of discretion standard. *Bradford v. State*, 960

N.E.2d 871, 873 (Ind. Ct. App. 2012). Here, however, Booker failed to object to the statements at trial. Conceding this failure, he couches his claim in terms of fundamental error.

> The fundamental error exception [to the contemporaneous objection rule] is "extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." The error claimed must either "make a fair trial impossible" or constitute "clearly blatant violations of basic and elementary principles of due process." This exception is available only in "egregious circumstances."

*Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010) (citations omitted).

Here, Booker asserts that Detective Hewitt "employed tactics of deceit" to elicit his admission that he entered B.M.'s room on the night that she was molested and that, as a result, his admission was not voluntary. Appellant's Br. at 8. Police deception does not automatically render a confession inadmissible. *Miller v. State*, 770 N.E.2d 763, 767 n.5 (Ind. 2002). Rather, police deception during an interview is merely a factor to be considered as part of the totality of the circumstances. *Id*.

Booker claims that Detective Hewitt stretched the truth during his interrogation by telling him that law enforcement had recovered DNA from his saliva and that there was a hidden camera inside B.M.'s room. In reality, DNA samples had been taken from B.M.'s vagina, but no testing had yet been performed. At trial, testimony from the forensics expert established that while the DNA tests were negative concerning Booker, such a finding was not inconsistent with B.M.'s account of digital penetration. Moreover, while there was no hidden camera inside B.M.'s room, the hallway surveillance camera established that Booker

7

entered B.M.'s room on the night that she was molested. Thus, independent evidence introduced at trial explained the DNA findings and corroborated his admission that he entered B.M.'s room. Absent any evidence indicating that the interrogation was otherwise coercive in tone or duration, the record simply does not support Booker's assertion that his admission was involuntarily given. In short, he has failed to establish any error, let alone fundamental error, in the trial court's admission of his statement to Detective Hewitt. Accordingly, we affirm.

Affirmed.

RILEY, J., and MATHIAS, J., concur.