## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**
Jul 17 2015, 8:36 am

*Kevin S. Smith*
**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Segun Rasaki,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 17, 2015

Court of Appeals Case No.
49A02-1411-CR-796

Appeal from the Marion Superior Court

The Honorable Reuben B. Hill, Judge

The Honorable William J. Nelson, Judge

Cause No. 49F18-1203-PC-13401

**Brown, Judge.**

[1] Segun Rasaki appeals his convictions for sexual battery as a class D felony and battery as a class B misdemeanor. Rasaki raises two issues, which we revise and restate as whether the evidence is sufficient to sustain his convictions. We affirm in part, reverse in part, and remand.

### Facts and Procedural History

[2] Rasaki was a physician with a medical practice in Marion County. A.H. was injured as a teenager when she fell in the shower, damaged her rectal area, and had nerve damage. A.H. began to see Rasaki in August or September of 2010 and had about five patient visits with him. On her first visit, Rasaki asked A.H. if she was married, A.H. answered that she was engaged, and Rasaki told her that her fiancé "had better hurry up and marry [her] before some doctor comes along and swoops [her] off [her] feet." Transcript at 9. Rasaki called A.H. "the girl with the tight anus," which embarrassed her. *Id.* at 8.

[3] On November 19, 2010, A.H. visited Rasaki's office for a routine appointment to obtain prescription pain medication. Rasaki had a discussion about A.H. needing birth control, and A.H stated that she did not, that she did not have sex any longer, and that it was painful. Rasaki then stated "he would check." *Id.* at 35. He had her unbutton her pants while lying on the examination table, and he started to pull her pants down. A.H. "kind of grabbed" Rasaki and said "I am on my period." *Id.* at 11. Rasaki said "I don't go to period" and began to rub two fingers up and down on A.H.'s vagina under her underwear. *Id.* Rasaki was not wearing any gloves and touched "the top of [A.H.'s] vagina . . . [i]n a circular motion with his hand." *Id.* at 36. He rubbed around her stomach

some more, placed his hands under her shirt to the outside of her bra, and rubbed the area outside of her bra. After leaving Rasaki's office, A.H. told her fiancé what had occurred, and during the drive home she called a nurse from her previous physician's office and then the police. About an hour after her appointment, A.H. met with Indianapolis Metropolitan Police Officers Christopher Houdashelt and Matthew Morgan at a restaurant and later with Detective Laura Smith at Methodist Hospital. Officer Morgan noticed that A.H. was visibly shaken and upset and cried a couple of times.

[4] On January 18, 2011, C.W. visited Rasaki for a follow up appointment and had her son with her. At the end of the appointment, Rasaki, C.W., and C.W.'s son were in the room, and Rasaki picked up C.W.'s son to play with him. As Rasaki played with her son, C.W. went to retrieve her coat and her son's coat. Rasaki then "attempted to walk behind" C.W., started "pushing on [C.W.'s] stomach" and asked her if she was pregnant, to which she answered "no," and "then [] started to go further down into [her] pants." *Id.* at 44. Rasaki was not wearing any gloves, ran his hands across C.W.'s Cesarean scar, and said "this is your Cesarean scar," and C.W. replied "yeah, I know it's there." *Id.* at 45. Rasaki "continued to go further and he put two of his fingers in [C.W.'s] vagina." *Id.* C.W. took Rasaki's hand out of her pants and asked him what he was doing, and "[h]e said nothing." *Id.* While this occurred, C.W.'s son was standing next to Rasaki and next to the wall. C.W. grabbed their coats and left without making another appointment, and she felt terrible. She filed a

complaint with the Attorney General about a week later, and Indianapolis Police Detective Smith later contacted her.

[5] In March 2012, the State charged Rasaki with sexual battery of C.W. as a class D felony and battery of A.H. as class B misdemeanor. In September 2012, the State filed an additional count against Rasaki for battery of C.W. as a class B misdemeanor. A bench trial was held on September 17, 2012, at which A.H., C.W., Officer Houdashelt, Officer Morgan, and Detective Smith among others testified. A.H. indicated that the November 19, 2010 exam by Rasaki was different in relation to other exams she had involving other doctors who touched her vagina as the other doctors wore gloves and told her step by step what they were doing and what to expect. She testified that the way Rasaki touched her was gentle, that it did not serve a purpose, and that she did not know why he was doing it. On cross-examination, when asked if Rasaki ever threatened her, C.W. replied "No," and when asked if Rasaki ever threatened her with force or force that was imminent, C.W. replied "No." *Id.* at 51-52. When asked "[d]id he hurt you," C.W. testified "[w]hen he touched me inappropriately." *Id.* at 52. When asked "[b]ut there was no injury sustained," C.W. said "No," and when asked if Rasaki had a weapon, held her down, or grabbed her and threw her to the ground "or anything like that," C.W. answered "No." *Id.* When asked if her son was held down, C.W. said "No." *Id.* At the conclusion of the evidence and argument, the trial court took the matter under advisement.

[6]     On September 25, 2012, the court found Rasaki guilty of sexual battery of C.W. as a class D felony and battery of A.H. as a class B misdemeanor. With respect to the allegation of sexual battery against C.W., the court concluded that "in light of all the circumstances . . . I find that there was force by the visual image that was created by the testimony was [sic] placing your arms around her and her [sic] hands inside of her pants while standing behind her was a sufficient force to restrain her every [sic] so slightly," that "[h]owever it might be but it constituted in my mind enough force to meet the requirements of the statute," and that "such a touching was not as a result of any reasonable medical evaluation that was the reason for C.W.'s visit." *Id.* at 88. Defense counsel asked whether the count for battery of C.W. as a misdemeanor would be vacated "since it was charged as a lesser," and the trial court responded affirmatively and stated there would be a finding of not guilty. *Id.* at 89.

[7]     On November 26, 2012, the court held a sentencing hearing at which the deputy prosecutor requested the court to find Rasaki guilty on the class B misdemeanor charge related to C.W. but merge it with the sexual battery conviction, defense counsel asked the court to deny the State's request, and the court stated that it would leave its judgment as it stands. The court sentenced Rasaki to 545 days with 180 days suspended for his conviction for sexual battery as a class D felony and to 180 days suspended for his conviction for battery as a class B misdemeanor, to run concurrently. The court also ordered that Rasaki be placed on probation for 180 days and that 245 days of the executed portion of his sentence be served on home detention. Rasaki filed a

motion to correct error, which the court denied on February 15, 2013. Rasaki filed a notice of appeal on July 10, 2013. On February 18, 2014, this court held that Rasaki forfeited his right to appeal. *Rasaki v. State*, 3 N.E.3d 1058, 1062 (Ind. Ct. App. 2014). However, we also noted that Rasaki was not without remedy and that he may petition the trial court for permission to file a belated notice of appeal pursuant to Post-Conviction Rule 2. *Id.* at 1062 n.2.

[8] Rasaki filed a petition for permission to file a belated notice of appeal pursuant to Post-Conviction Rule 2 on March 7, 2014, and the court denied his petition on March 11, 2014. Rasaki filed a motion to correct error and request for a hearing, which the court denied. On appeal, we concluded that the trial court erred in denying Rasaki's petition for permission to file a belated notice of appeal, which he filed seventeen days after this court's prior decision. *Rasaki v. State*, No. 49A04-1404-CR-167, slip op. at 5 (Ind. Ct. App. Oct. 14, 2014). On remand, the trial court granted Rasaki permission to file a belated appeal, and Rasaki filed his notice of appeal.

## *Discussion*

[9] The issue is whether the evidence is sufficient to sustain Rasaki's convictions. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven

beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State,* 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[10] At the time of the offenses, Ind. Code § 35-42-4-8 provided in part that "[a] person who, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person, touches another person when that person is . . . compelled to submit to the touching by force or the imminent threat of force" commits "sexual battery, a Class D felony." (Subsequently amended by Pub. L. No. 72-2012, § 4; Pub. L. No. 158-2013, § 444 (eff. Jul. 1, 2014)). Ind. Code § 35-42-2-1 provided in part that "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor." (Subsequently amended by Pub. L. No. 114-2012, § 137; Pub. L. No. 158-2013, § 420 (eff. Jul. 1, 2014); Pub. L. No. 147-2014, § 2 (eff. July 1, 2014)).

[11] Rasaki argues that C.W. testified that he did not use force or the threat of force and that she did not protest or ask Rasaki to stop when he began feeling her stomach and moved his hand down to her Cesarean scar. He argues that, although the incident made C.W. feel terrible, C.W.'s feelings after the incident do not establish that she was compelled to submit to the touching by force or threat of force. Rasaki further argues that A.H. testified that his examination was gentle, that he did not strike her, use force, or cause her to feel fear, that she unbuttoned her own pants at his direction, and that her testimony that she did

not understand the purpose of the examination does not make it rude or insolent.

[12] The State argues that the force to show sexual battery need not be physical but may be implied from the circumstances, that the presence of forceful compulsion is determined from the victim's perspective, and that, while fear may be evidence of force or threat of force, fear is not an element of sexual battery. The State contends that the evidence shows Rasaki exerted force over C.W. over a sufficient period of time to allow him to insert his fingers in her vagina. The State further maintains the court properly found Rasaki's use of physical force in reaching around C.W. from behind, pushing his hands down her pants, and inserting his fingers into her vagina required a sustained physical imposition over her. The State also argues that Rasaki knowingly touched A.H.'s vagina in an unwanted manner. It argues that A.H. did not seek Rasaki's medical attention for any reasons related to birth control or sexual dysfunction and that Rasaki persisted in moving his bare fingers in a circular motion at the top of her vagina in a manner that led her to believe there was no medical purpose for the touching. It also argues that Rasaki's touching of A.H. with ungloved fingers, his references to her as "the girl with the tight anus," and his comments about "some doctor" coming along to "swoop" her off her feet are probative of Rasaki's purpose in the unwanted touching. Appellee's Brief at 13.

[13] The court heard testimony from A.H. and C.W., as well as from Officer Houdashelt, Officer Morgan, and Detective Smith regarding their observations.

The court as the trier of fact was able to assess the testimony and the credibility of A.H. and C.W. and the other witnesses. To the extent Rasaki's arguments request this court to reweigh the evidence or judge the credibility of the witnesses, we may not do so. *See Drane*, 867 N.E.2d at 146.

[14] With respect to his sexual battery conviction, Rasaki does not argue that he did not touch C.W. or that he did not act with the requisite intent under Ind. Code § 35-42-4-8, but argues solely that C.W. was not compelled to submit to the touching by force or the imminent threat of force. Evidence that a victim did not voluntarily consent to a touching does not, in itself, support the conclusion that the defendant compelled the victim to submit to the touching by force or threat of force. *Chatham v. State*, 845 N.E.2d 203, 207 (Ind. Ct. App. 2006). However, the presence or absence of forceful compulsion is to be determined from the perspective of the victim, not the assailant. *McCarter v. State*, 961 N.E.2d 43, 46 (Ind. Ct. App. 2012) (citing *Tobias v. State*, 666 N.E.2d 68, 72 (Ind. 1996)), *trans. denied*. "This is a subjective test that looks to the victim's perception of the circumstances surrounding the incident in question," and thus the issue is "whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance." *Tobias*, 666 N.E.2d at 72.

[15] Although an element of the offense of sexual battery is that the victim was compelled to submit to the touching by force or the imminent threat of force, the force need not be physical or violent, but may be implied from the circumstances. *Chatham*, 845 N.E.2d at 206-207 (citing *Scott-Gordon v. State*, 579 N.E.2d 602, 604 (Ind. 1991)). Fear is not an element of sexual battery

under Ind. Code § 35-42-4-8, and fear is not a prerequisite to proving force or imminent threat of force. *McCarter*, 961 N.E.2d at 46.

[16] We find that C.W.'s immediate reaction to Rasaki placing his fingers in her vagina demonstrated that she did not voluntarily consent to the touching. However, the State did not present evidence or elicit testimony from C.W. to support the conclusion that Rasaki compelled C.W. to submit to the touching by force or the imminent threat of force. The record reveals that C.W. specifically testified on cross-examination that Rasaki had not threatened her and that he did not threaten her with force or force that was imminent. There is no evidence that J.H. was compelled to submit to the touching by Rasaki by force or the imminent threat of force as required by Ind. Code § 35-42-4-8. Accordingly, we reverse Rasaki's conviction for sexual battery as a class D felony. *See Scott-Gordon*, 579 N.E.2d at 604 (noting that Scott-Gordon approached J.H. from behind and grabbed his buttocks and that J.H. immediately jumped back and hit Scott-Gordon in the eye, observing that J.H. specifically testified that there were no threats made by Scott-Gordon, and concluding that J.H.'s immediate reaction demonstrated that he did not voluntarily consent to the touching but that the evidence did not support the conclusion J.H. was compelled to submit to the touching by force or imminent threat of force, and reversing Scott-Gordon's conviction for sexual battery of J.H.); *Frazier v. State*, 988 N.E.2d 1257, 1261 (Ind. Ct. App. 2013) (reversing one of Frazier's convictions for sexual battery where the defendant grabbed S.R.'s shoulder and ground his pelvis against her buttocks, and holding that,

while some level of force facilitated the touching, the evidence did not show the victim was compelled to submit to the touching by force or threat of force); *McCarter*, 961 N.E.2d at 47 (noting that McCarter withdrew his hands after D.H. told him to "get off of [her]" and holding that, while the touching may have occurred with some force, the evidence did not show that D.H. was compelled to submit to it by force or threat of force); *Chatham*, 845 N.E.2d at 205-208 (noting that Chatham "came up behind [Kerns] and grabbed up with [his] hand in between [her] thighs and [her] crotch as far as [he] could," holding that Kerns did not have the opportunity to grant or deny consent to the touching and that the evidence was insufficient to show that Chatham compelled Kerns to submit to the touching by force or imminent threat of force, and reversing his sexual battery conviction).

[17]     When a conviction is reversed because of insufficient evidence, we may remand for the trial court to enter a judgment of conviction upon a lesser-included offense if the evidence is sufficient to support the lesser offense. *Chatham*, 845 N.E.2d at 208 (citing *Neville v. State*, 802 N.E.2d 516, 519 (Ind. Ct. App. 2004), *trans. denied*). The lesser-included offense is factually included in the crime charged if the charging instrument alleged that the means used to commit the crime included all the elements of the alleged lesser-included offense. *Id.* In *McCarter*, we noted:

> The offense of battery as a class B misdemeanor is governed by
> Indiana Code Section 35-42-2-1(a). That statute provides that "[a]
> person who knowingly or intentionally touches another person in a
> rude, insolent, or angry manner commits battery, a Class B

misdemeanor." Ind. Code § 35-42-2-1(a). The charging information provided that on March 22, 2010, McCarter, "did . . . with the intent to arouse or satisfy his own sexual desires, touch another person, to-wit: [D.H.], when said victim was compelled to submit to said touching by force or the imminent threat of force." Appellant's Appendix at 56. The means used to commit sexual battery as alleged in the charging instrument included all the elements of battery as a class B misdemeanor. The State established that McCarter grabbed D.H.'s buttocks. This evidence is sufficient to prove that McCarter committed battery as a class B misdemeanor. Accordingly, we reverse McCarter's sexual battery conviction and remand with instructions to enter judgment for battery as a class B misdemeanor and to resentence him accordingly.

961 N.E.2d at 47-48.

[18] Similarly, here, the charging information alleged that Rasaki, "with intent to arouse or satisfy the sexual desires of [C.W.] and/or the sexual desires of [Rasaki], did touch [C.W.] when [C.W.] was compelled by force or imminent threat of force to submit to such touching." Appellant's Appendix at 22. As we held in *McCarter*, the means used to commit sexual battery as alleged in the charging instrument included all the elements of battery as a class B misdemeanor. At the sentencing hearing and on appeal, Rasaki acknowledged that the allegation that he committed battery as a class B misdemeanor was a lesser included charge of the allegation that he committed sexual battery as a class D felony. At trial, the State established that Rasaki placed his hand in C.W.'s pants and placed his fingers in her vagina. This evidence is sufficient to prove that Rasaki committed battery of C.W. as a class B misdemeanor under Ind. Code § 35-42-2-1. Accordingly, we remand with instructions to enter judgment for battery of C.W. as a class B misdemeanor. *See McCarter*, 961

N.E.2d at 47-48; *see also Chatham*, 845 N.E.2d at 208 (holding that the State established that Chatham grabbed Kerns in the crotch/buttock area and that this evidence was sufficient to prove that Chatham committed battery as a class B misdemeanor, and remanding with instructions to enter judgment for battery as a class B misdemeanor).

[19] As to his conviction for battery of A.H., the evidence shows that, at a visit on November 19, 2010, Rasaki had a discussion about A.H. needing birth control, and A.H stated that she did not, that she did not have sex any longer, and that it was painful. Rasaki then stated "he would check" and directed A.H. to unbutton her pants while lying on the examination table. Transcript at 35. Rasaki started to pull her pants down, she "kind of grabbed" him and said she was "on [her] period," and Rasaki said "I don't go to period." *Id.* at 11. He did not wear gloves and rubbed two fingers up and down on A.H.'s vagina under her underwear. He touched "the top of [A.H.'s] vagina . . . [i]n a circular motion with his hand." *Id.* at 36. He also placed his hands under her shirt and rubbed the area outside of her bra. A.H. met with police about an hour after the appointment, and she was visibly shaken and cried. She testified that Rasaki had called her "the girl with the tight anus" and that, on her first visit, Rasaki had asked her if she was married and stated that her fiancé "had better hurry up and marry [her] before some doctor comes along and swoops [her] off [her] feet." *Id.* at 8-9. A.H. testified that Rasaki's exam was different from her exams by other doctors who touched her vagina, that Rasaki did not wear gloves, that the way he touched her was gentle, that it did not serve a purpose,

and that she did not know why he was doing it.  The trier of fact could find from this evidence that Rasaki knowingly touched A.H. in a rude, insolent, or angry manner under Ind. Code § 35-42-2-1.

## *Conclusion*

[20] For the foregoing reasons, we affirm Rasaki's conviction for battery of A.H. as a class B misdemeanor and reverse his conviction for sexual battery of C.W. as a class D felony and remand with instructions to enter judgment for battery of C.W. as a class B misdemeanor.

[21] Affirmed in part, reversed in part, and remanded.

Crone, J., and Pyle, J., concur.