## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 16 2017, 5:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ryan W. Tanselle
Capper Tulley & Reimondo
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

T.C.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

February 16, 2017

Court of Appeals Case No.
32A01-1606-JV-1318

Appeal from the Hendricks
Superior Court

The Honorable Karen M. Love,
Judge

Trial Court Cause No.
32D03-1601-JD-20

**Barnes, Judge.**

# Case Summary

T.C. appeals the trial court's delinquency adjudication for sexual battery, a Level 6 felony if committed by an adult. We affirm.

# Issue

T.C. raises one issue for our review: whether the State's evidence was sufficient to support the trial court's adjudication.

# Facts

K.V. and T.C. met when K.V. was in fifth grade and T.C. was in seventh grade. They had a short relationship, "[j]ust talking, and then became good friends." Tr. p 46. They "drifted apart" for a while but started talking again via Snapchat, text message, and FaceTime during the first semester of K.V.'s seventh-grade year. *Id.* at 47. T.C. lived near K.V.'s house, and, although his bus stop was in front of his own house, T.C. began walking to K.V.'s bus stop. K.V.'s bus stop was located on the corner in front of the Hendricks County house where she lived with her grandparents. When T.C. first started waiting at K.V.'s bus stop, in autumn of 2015, the two talked. Then they "got to hugging," which K.V. "didn't mind as much." *Id.* at 48. The physical contact between K.V. and T.C. increased. "It just started growing and to where he would just start touching me and everything." *Id.* at 49. K.V. testified that T.C. touched her breasts. The touching made her uncomfortable, and she told T.C. they "shouldn't be doing this." *Id.*

[4] At the time of this incident, K.V. was thirteen years old and in seventh grade. T.C. was a fifteen-year-old high-school freshman. He played football and was a member of the high school wrestling team. On December 1, 2015, K.V. waited for the bus in front of her house. Her grandparents were not home, but the surveillance camera mounted on their house recorded her wait. When K.V. saw T.C. approaching her, she crouched down because she "wasn't comfortable." *Id.* at 57. K.V. testified that T.C. attempted to touch her breast. She told him to stop. K.V. remained in a crouch while she waited for the bus. Much of the time, her head was down, and she did not turn her body toward T.C. At one point during the wait, T.C. approached K.V. from behind and seems to have reached around her. K.V. raised her body in what appears to have been an effort to shake him off. *See* Ex. 1, Video 1 at 9:07:16.

[5] While K.V. waited for the bus on December 2, 2015, T.C. again walked to her bus stop. When K.V. saw T.C. approaching, she sat on the ground with her legs straight out in front of her and her hands on her stomach. K.V. testified she sat down because she was "uncomfortable." Tr. p. 69. K.V. testified she could not see the bus from inside her house, and, therefore, she "couldn't go inside or else [she] wouldn't have a way to school." *Id.* at 60.

[6] T.C. grabbed K.V.'s breasts. She told him to stop. He did not stop, and the surveillance video shows that T.C. touched K.V. in this manner several times. K.V. also testified T.C. tried to reach into her leggings, and she tried to pull his hands away. K.V. did not want T.C.'s hand in her leggings, but he succeeded and "tried to finger [her]." *Id.* at 63. K.V. told T.C. to stop. K.V. testified T.C.

tried two more times to reach into her leggings. She told him to stop. She tried to pull his hands away, but she was not able to. K.V. "brought [her] legs up and [she] put [her] head down . . . [she looked] down to the ground." *Id.* at 64-65. Next T.C. moved behind K.V. and touched her breasts again. He picked her up to a standing position. He then grabbed her waist and put pressure on her back. K.V. did not want T.C. to pick her up. T.C. pulled down K.V.'s leggings and penetrated her anus with his penis. It hurt. K.V. told him to stop. T.C. did not stop.

[7] Citing only T.C.'s December 2 actions, the State filed a petition alleging T.C. to be a delinquent child for committing sexual battery, which would be a Level 6 felony if committed by an adult. The trial court held a fact-finding hearing on May 16, 2016, found the allegations against T.C. to be true, and adjudicated him to be a delinquent child. The trial court ordered T.C. to serve twelve months in the Department of Correction but suspended the entirety of the term of detention. T.C. now appeals the trial court's adjudication.

## Analysis

[8] T.C. alleges the State's evidence was not sufficient to support his adjudication.

> When the State seeks to have a juvenile adjudicated a delinquent for committing an act that would be a crime if committed by an adult, the State must prove every element of that crime beyond a reasonable doubt. When reviewing the sufficiency of the evidence supporting a juvenile adjudication, we neither reweigh the evidence nor judge the credibility of the witnesses. We consider only the evidence of probative value and the reasonable inferences that support the determination.

*Z.A. v. State*, 13 N.E.3d 438, 439 (Ind. Ct. App. 2014) (citations omitted) (quotations omitted).

[9]     Pursuant to Indiana Code Section 35-42-4-8, an adult commits Level 6 felony sexual battery if he or she, with intent to arouse or satisfy the person's own sexual desires or the sexual desires of another person, touches another person when that person is compelled to submit to the touching by force or the imminent threat of force.  Here, T.C. contends only that the State failed to prove he used force or the threat of force to compel K.V. to submit to his touching.

[10]    Our supreme court has held that the legislature's use of the word "compelled,"

> demonstrates that it is the victim's perspective, not the assailant's, from which the presence or absence of forceful compulsion is to be determined. This is a subjective test that looks to the victim's perception of the circumstances surrounding the incident in question. The issue is thus whether the victim perceived the aggressor's force or imminent threat of force as compelling her compliance.

*Tobias v. State*, 666 N.E.2d 68, 72 (Ind. 1996).

> Evidence that a victim did not voluntarily consent to a touching does not, in itself, support the conclusion that the defendant compelled the victim to submit to the touching by force or threat of force.  Not all touchings intended to arouse or satisfy sexual desires constitute sexual battery; only those in which the person touched is compelled to submit by force or imminent threat of force violate Indiana Code section 35-42-4-8.

*Frazier v. State*, 988 N.E.2d 1257, 1261 (Ind. Ct. App. 2013) (citation omitted) (quotation omitted). "Force may be implied from the circumstances." *Id.* (citation omitted).

[11] On December 1, 2015, K.V. told T.C. to stop touching her. On December 2, 2015, K.V. told T.C. to stop touching her and tried to push his hands away when he touched her breasts, put his hand inside her leggings, and penetrated her anus with his penis. The video is recorded from a distance that is far enough away, and is of such quality that we cannot conclusively observe either K.V.'s hand movements or T.C.s penetration of K.V.'s anus with his penis. However, the movements we can discern are consistent with K.V.'s testimony. There is no audio in the recording, but K.V.'s testimony was direct and unequivocal—she told T.C. to stop and tried to push his hands away. That K.V. repeatedly told T.C. to stop touching her makes this case analogous to *Bailey v. State*, 764 N.E.2d 728 (Ind. Ct. App. 2002), *trans. denied*.

[12] Bailey was convicted of sexual battery after he approached a woman in a park from behind and grabbed her buttocks.[1] Prior to that incident, Bailey had approached the same woman and asked if he could go home with her and "pull down her pants." *Bailey*, 764 N.E.2d at 729. The woman told Bailey to leave her alone and left. *Id.* at 729. This court concluded the woman was compelled

---

[1] Bailey was convicted under a prior version of Indiana Code Section 35-42-4-8 in which sexual battery was a Class D felony. Although our legislature has reclassified that crime as a Level 6 felony, the elements are the same.

by force or the threat of force because, "prior to the incident where Bailey grabbed Adams's buttocks, Adams had already told Bailey to leave her alone. However, despite Adams's prior refusal of Bailey's advances, Bailey forced himself upon Adams by grabbing her buttocks, thereby forcing her to submit to the touching." *Id.* at 731.

[13] T.C. asks us to distinguish the "level of force [that] caused T.C. to touch K.V." from force used to compel a touching, and he argues he never confined her. Appellant's Br. p. 9. His argument largely ignores the fact K.V. repeatedly asked him to stop touching her and tried to push his hands away from her. Relying on *Bailey*, we conclude that, because K.V. actively tried to prevent T.C. from touching her, he necessarily used more force than that required to merely touch her, and that the force T.C. used to overcome K.V.'s attempts to stop the touching compelled her submission.

[14] Disturbingly, T.C. faults K.V. for failing to "pull away . . . move her body away from him, stand up, kick him with her feet, call for help, walk back in her home, or walk away from the scene." *Id.* at 10. He cites to no case requiring one to resist an assault in this manner. We are aware of no such case, and we reject the contention that one must do so.

[15] Finally, we reiterate that the test for determining whether a victim has been compelled by force or the threat of force is a subjective one and that the victim's perception is paramount. *Tobias*, 666 N.E.2d at 72. T.C. argues he was "not in a special position of trust or power as compared to K.V. Instead, he was a

freshman while she was a seventh grade student." Appellant's Br. p. 10. We agree that T.C. was not in a special position of trust of power; he was not her employer or teacher or coach. Nonetheless, we readily conclude that, from K.V.'s perspective, T.C. forcefully compelled her to submit to his assaultive touches.

[16] T.C., an older high school student, who was a wrestler and football player, had been inappropriately touching thirteen-year-old K.V. for some time. K.V. testified that, at first, T.C. only hugged her, but that he then began touching her breasts. K.V. was uncomfortable in T.C.'s presence. Despite K.V.'s protestations and attempts to remove T.C.'s hands from her body on December 1 and 2, 2015, T.C.'s assaultive touches escalated and culminated in him picking K.V. up from the ground against her will, pressing on her back, and penetrating her anus with his penis, causing her pain. Finally, K.V. was home alone while she waited for her school bus and believed she had no choice but to wait for her bus outside because she could not see the bus arriving from inside her house. This is more than sufficient to establish that, from K.V.'s perspective, T.C.'s force compelled her compliance. *See Tobias*, 666 N.E.2d at 72.

## Conclusion

[17] The evidence is sufficient to prove T.C. committed acts that would constitute Level 6 felony sexual battery if committed by an adult. We affirm.

[18] Affirmed.

Kirsch, J., and Robb, J., concur.